**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:        Justices:
Clifford W. Taylor    Michael F. Cavanagh
                      Elizabeth A. Weaver
                      Marilyn Kelly
                      Maura D. Corrigan
                      Robert P. Young, Jr.
                      Stephen J. Markman

FILED MAY 30, 2007

WAPEKA B. BARNETT, Personal
Representative of the Estate of James Otha
Barnett, III, Deceased,

      Plaintiff-Appellee,

v                                          No. 130071

CESAR D. HIDALGO, M.D., CESAR D.
HIDALGO, M.D., P.C.,

      Defendants-Appellees,

and

RENATO ALBARAN, M.D., AND RENATO
ALBARAN, M.D., P.C.,

      Defendants-Appellants,

and

MUSKESH S. SHAH, M.D., ONCOLOGY &
HEMATOLOGY OF OAKLAND, P.C.,
CRITTENTON HOSPITAL, and CRITTENTON
CORPORATION,

      Defendants.

_____

WAPEKA B. BARNETT, Personal
Representative of the Estate of James Otha
Barnett, III, Deceased,

Plaintiff-Appellee,

v                                                                    No. 130073

CESAR D. HIDALGO, M.D., CESAR D.
HIDALGO, M.D., P.C.,

Defendants-Appellants,

and

RENATO ALBARAN, M.D., AND RENATO
ALBARAN, M.D., P.C.,

Defendants-Appellees,

and

MUSKESH S. SHAH, M.D., ONCOLOGY &
HEMATOLOGY OF OAKLAND, P.C.,
CRITTENTON HOSPITAL, and CRITTENTON
CORPORATION,

Defendants.
_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

We granted leave to appeal to consider the following issues: (1) whether the trial court committed error requiring reversal by admitting affidavits of merit as substantive and impeachment evidence; (2) whether the trial court committed error requiring reversal by allowing the jury to consider affidavits of merit that referenced a settling defendant; and (3) whether the trial court committed error

2

requiring reversal in this case by admitting the deposition of a settling defendant as substantive evidence.

We reverse the judgment of the Court of Appeals because of its determinations regarding each of these issues. Regarding the first issue, we hold on the basis of MRE 801(d)(2)(B) and (C) and MRE 613 that the affidavits of merit were properly admitted as substantive evidence because they constitute admissions by a party opponent, and as impeachment evidence because they constitute prior inconsistent statements of witnesses. Regarding the second issue, we hold on the basis of MCL 600.2957 and MCL 600.6304 that the parties were permitted to refer to the involvement of nonparties and, therefore, the jury could have considered the affidavits of merit that referenced a settling defendant. Regarding the third issue, we hold that even if the deposition in this case was improperly used as substantive evidence, the error was harmless because the information was alternatively introduced through other permissible means.

## I. FACTS AND PROCEDURAL HISTORY

In this medical malpractice case, the decedent, James Otha Barnett, III, died from a rare blood disorder after undergoing gall bladder surgery performed by defendant Dr. Renato Albaran, a general surgeon at defendant Crittenton Hospital. After surgery, Albaran detected Barnett's low blood-platelet count. The most common cause of a low platelet count after surgery is disseminated intravascular coagulation (DIC) from postsurgical infection. Albaran consulted with defendant Dr. Muskesh Shah, a hematologist, and ordered a DIC screen to rule out

3

postsurgical infection as a cause of Barnett's low platelet count. Shah concluded that Barnett was suffering from an exacerbation of a preexisting platelet disorder, idiopathic thrombocytopenic purpura (ITP), and not from DIC. Because there was no evidence of internal bleeding or postsurgical infection, and because he felt that Shah had provided a reasonable explanation for the low platelet count, Albaran indicated that Barnett could be discharged after he was cleared for release by Shah.

Two days after being discharged from the hospital, Barnett returned with complaints of disorientation. Dr. William Bowman, the attending physician, consulted with Albaran, who concluded that there were no surgery-related problems. Bowman also consulted with defendant Dr. Cesar Hidalgo, a neurologist, who initially concluded that Barnett had suffered a stroke. At Hidalgo's recommendation, Bowman consulted with Shah regarding the low-platelet condition, and a second DIC screen was ordered, but the results were not received until after Barnett passed away. After a computerized tomography (CT) scan indicated that Barnett had not suffered a stroke, Hidalgo recommended further testing, including a magnetic resonance imaging (MRI) evaluation, but Barnett died before the tests could be performed. It turned out that Barnett suffered from a rare clotting disorder, thrombotic thrombocytopenic purpura (TTP), that required immediate blood plasma infusions and transfusions. If left untreated, as it was here, TTP is nearly always fatal.

As the personal representative of the estate of her deceased husband, plaintiff Wapeka Barnett filed a medical malpractice action against Albaran and his professional corporation, Hidalgo and his professional corporation, Shah and his alleged employer Oncology & Hematology of Oakland, Crittenton Hospital, and Crittenton Corporation. Plaintiff's affidavits of merit were signed by a general surgeon, Dr. Scott Graham; a neurologist, Dr. Eric Wassermann; and a hematologist, Dr. Rachel Borson. Graham's affidavit of merit stated that Albaran failed to take sufficient precautions to prevent a postsurgical infection before he discharged Barnett. Wassermann's affidavit of merit stated that Hidalgo misdiagnosed Barnett's condition as a stroke and failed to take proper precautions when Barnett was transferred to a different medical facility for the MRI testing. Finally, Borson's affidavit of merit stated that Shah should have performed further testing, should have stabilized Barnett before discharging him from the hospital, and should have diagnosed TTP and initiated treatment.

Before trial, plaintiff settled with Crittenton Hospital, Crittenton Corporation, Shah, and Oncology & Hematology of Oakland. Albaran filed a motion for leave to file notice of nonparty fault pursuant to MCR 2.112(K), which the trial court initially granted. When Hidalgo filed a similar motion, the trial court adopted plaintiff's position that the court rule was inapplicable in medical malpractice cases, because liability remains joint and several, and denied both Hidalgo's and Albaran's motions.

5

At trial, the testimony of plaintiff's three experts differed from their statements in their depositions and affidavits of merit. They stated that as part of their preparation for trial they had reviewed the hospital records and the doctors' depositions and that Albaran and Hidalgo had violated standards of care by, among other reasons, failing to review and follow up on blood tests, and failing to diagnose or recognize TTP. Albaran and Hidalgo sought to establish that, as a general surgeon and a neurologist respectively, they could not be expected to diagnose TTP, which is purely a blood disorder, and that Shah, as the hematologist, was the doctor responsible for such a diagnosis. Graham conceded that he no longer believed that Albaran had violated the standard of care with regard to protecting Barnett against postoperative infection. However, Graham stated that it was inexcusable that neither Albaran nor Shah had reviewed the results of Barnett's DIC screen. In response, defense counsel examined Graham with regard to the depositions of Albaran and Shah, where both testified that they had reviewed the DIC screen results. Albaran testified that he had reviewed the DIC screen results, that he had complied with the appropriate standard of care by requesting a hematology consultation, and that he had reasonably relied on Shah's assessment of Barnett's condition. Similarly, Hidalgo argued that he had reasonably relied on Shah's diagnosis and that Bowman, the attending physician, had been responsible for ordering a hematology consultation.

At the outset of trial, plaintiff moved to exclude the admission of her experts' affidavits of merit for any purpose and to exclude any reference to the fact

6

that Shah had settled. The remaining defendants agreed that they would not mention the settlement at trial. Plaintiff and Albaran also agreed that Shah's deposition would not be read to the jury and that, in return, plaintiff would not read to the jury the deposition of one of the defense experts, in lieu of their live testimony at trial. The trial court admitted plaintiff's affidavits of merit as substantive evidence, including the ones referring to Shah, and permitted defense counsel to cross-examine plaintiff's experts regarding the differences between the affidavits of merit and their trial testimony. The jury found in favor of defendants, and plaintiff filed a motion for a new trial, which the trial court denied.

Plaintiff appealed by right, claiming that she was entitled to a new trial because the admission of the affidavits of merit as substantive and impeachment evidence, together with the use of Shah's deposition, denied her a fair trial. The Court of Appeals agreed and reversed the trial court's judgment. 268 Mich App 157, 163; 706 NW2d 869 (2005). First, the Court of Appeals held that the admission of the affidavits of merit that referenced Shah and listed Shah as a defendant was improper under *Brewer v Payless Stations,Inc*, 412 Mich 673; 316 NW2d 702 (1982), and *Clery v Sherwood*, 151 Mich App 55; 390 NW2d 682 (1986), because it allowed the jury to speculate about a possible settlement. Second, the Court held that the affidavits of merit constituted inadmissible hearsay that could not be used as substantive evidence. Third, the Court held that the affidavits of merit were inadmissible as impeachment evidence because they were not inconsistent with the experts' testimonies at trial, which were based on new

7

facts developed throughout the course of discovery, and that even assuming that

the use of the affidavits for impeachment purposes was proper, the trial court

improperly permitted the affidavits to be given to the jury as exhibits.  Finally, the

Court of Appeals held that even though the use of Shah's deposition was proper

for impeachment of Graham's testimony that there had been no review of the DIC

screen results, its use as substantive evidence constituted error requiring reversal.

We granted applications by Albaran and Hidalgo for leave to appeal.  477 Mich

851 (2006).[1]

## II. STANDARD OF REVIEW

A trial court's decision whether to grant a new trial is reviewed for an abuse

of discretion.  *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912

(2001).  An abuse of discretion occurs when the decision results in an outcome

falling outside the range of principled outcomes.  *Woodard v Custer*, 476 Mich

545, 557; 719 NW2d 842 (2006); *Maldonado v Ford Motor Co*, 476 Mich 372,

388; 719 NW2d 809 (2006).  A trial court's decision to admit evidence is also

reviewed for an abuse of discretion.  *People v Lukity*, 460 Mich 484, 488; 596

NW2d 607 (1999).  However, when the trial court's decision to admit evidence

involves a preliminary question of law, the issue is reviewed de novo, and

---

[1] We directed the parties to include among the issues to be briefed "whether *Brewer v Payless Stations, Inc*, 412 Mich 673 (1982), and *Clery v Sherwood*, 151 Mich App 55 (1986), have continuing vitality in light of MCL 600.6304 and MCL 600.2957, which require the finder of fact to determine and apportion the liability of nonparties."

admitting evidence that is inadmissible as a matter of law constitutes an abuse of discretion. *Id.*

## III. ANALYSIS

## A. AFFIDAVITS AS SUBSTANTIVE AND IMPEACHMENT EVIDENCE

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). In pertinent part, MRE 801(d) provides that a statement is not hearsay in the following circumstances:

> (1) *Prior Statement of Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person; or

> (2) *Admission by Party-Opponent.* The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, except statements made in connection with a guilty plea to a misdemeanor motor vehicle violation or an admission of responsibility for a civil infraction under laws pertaining to motor vehicles, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . .

Affidavits of merit are required to accompany a complaint alleging medical malpractice. MCL 600.2912d(1) provides:

9

Subject to subsection (2), the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a *statement* of each of the following:

(a) The applicable standard of practice or care.

(b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.

(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.

(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice. [Emphasis added.]

We disagree with the Court of Appeals that Borson's affidavit of merit constitutes inadmissible hearsay. While an affidavit of merit is inadmissible under MRE 801(d)(1)(A) as a prior inconsistent statement because it is not given "at a trial, hearing, or other proceeding, or in a deposition," an affidavit of merit nonetheless is admissible as an admission by a party-opponent under MRE 801(d)(2)(B) and (C). An affidavit of merit in this context constitutes a sworn statement regarding the applicable standard of practice or care, the health professional's opinion that the applicable standard of practice or care was breached by the defendant, the actions that should have been taken or omitted by the defendant in order to have complied with the applicable standard of practice or

10

care, and the manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged. MCL 600.2912d(1).

In order for plaintiff to demonstrate that she has a valid malpractice claim and as a precondition to initiating her action, plaintiff was required to file an affidavit of merit in support of her complaint. As part of the pleadings,[2] an affidavit of merit is generally admissible as an adoptive admission;[3] by filing the affidavit of merit with the court, plaintiff manifests "an adoption or belief in its truth."[4] MRE 801(d)(2)(B); see also MRPC 3.3(a)(4). In the instant case, from among the universe of potential experts, plaintiff hired experts of her own choosing to prepare the affidavits of merit, she was fully cognizant of the experts' statements made in the affidavits, she voluntarily chose to submit those particular affidavits in support of her complaint, and she summoned the same experts as

---

[2] See, e.g., *Kowalski v Fiutowski*, 247 Mich App 156, 164; 635 NW2d 502 (2001) (The Court of Appeals held that "when a defendant fails to file an affidavit of meritorious defense, that defendant has failed to plead.").

[3] See *Hunt v CHAD Enterprises, Inc*, 183 Mich App 59, 63; 454 NW2d 188 (1990) ("statements in pleadings may be treated as admissions").

[4] See, for example, *Pfizer Inc v Teva Pharmaceuticals USA, Inc*, 2006 US Dist LEXIS 77970 (D NJ, 2006) (expert affidavits submitted by the plaintiff in support of its European patent application represented adoptive admissions); *Kreppel v Guttman Breast Diagnostic Institute, Inc*, 1999 US Dist LEXIS 19602 (SD NY, 1999) (report prepared by medical expert witness who was also deposed and listed as a trial witness, which was produced by defendant to the other parties, constituted an admission); *Grundberg v Upjohn Co*, 137 FRD 365 (D Utah, 1991) (protocol report forms recording the results of research sponsored by the defendant, which were submitted to the Food and Drug Administration in connection with the defendant's application for approval to market a drug, were admissible as nonhearsay adoptive admissions).

11

witnesses at trial. These steps each reflect an acceptance of the contents of the affidavits of merit sufficient, in our judgment, to constitute an adoption or belief in their truth.[5]

Moreover, an affidavit of merit satisfies the requirements of MRE 801(d)(2)(C). An independent expert who is not withdrawn before trial is essentially authorized by the plaintiff to make statements regarding the subjects listed by MCL 600.2912d(1)(a) through (d). Therefore, consistent with the actual language of MRE 801(d)(2)(C), an affidavit of merit is "a statement by a person authorized by the party to make a statement concerning the subject . . . ."[6] In the

---

[5] We note that MRE 801(d)(2) contains no express or implied requirement of personal knowledge or understanding on the part of the plaintiff-declarant of the facts or medical expertise underlying his or her statement. See, e.g., *Mahlandt v Wild Canid Survival & Research Ctr, Inc*, 588 F2d 626, 630-631 (CA 8, 1978), wherein the court held that FRE 801(d)(2)(D) does not contain an express or implied requirement that the declarant have personal knowledge of the facts underlying his or her statement.

[6] See, for example, *Reid Bros Logging Co v Ketchikan Pulp Co*, 699 F2d 1292, 1306-1307 (CA 9, 1983) (report prepared by an employee of a shareholder of the defendant's parent company at the request of the chairman of the board of the defendant's company on the basis of free access to all the company's books and records and that was circulated to the officers and managers was an authorized statement under FRE 801[d][2][C]); *Collins v Wayne Corp*, 621 F2d 777, 781-782 (CA 5, 1980) (deposition of expert hired by the defendant to investigate an accident and report his conclusions was admissible as an admission under FRE 801[d][2][C], which the defendant had the opportunity to explain, but the deposition was not a conclusive, judicial admission); *Glendale Fed Bank, FSB v United States*, 39 Fed Cl 422, 423-425 (1997) (deposition of expert who was not withdrawn before trial remains "authorized" by the party and amounts to a party-admission). But see contra *Kirk v Raymark Industries, Inc*, 61 F3d 147, 163-164 (CA 3, 1995). The court held that the testimony of an expert witness who is called

(continued…)

12

instant case, although plaintiff had no right to control the content of the independent experts' statements, she hired the experts and invested them with the authority to prepare affidavits of merit on her behalf. Subsequently, with full knowledge of the contents of these affidavits and with a belief that they demonstrated the validity of her claims, plaintiff submitted the affidavits of merit in support of her complaint. Plaintiff called the same experts as witnesses at trial and failed to amend the affidavits of merit to reflect any change in opinion. Plaintiff cannot now reasonably deny that she authorized the experts to make statements concerning the subject of the affidavits.[7]

While it is true that plaintiffs have a statutory obligation to submit affidavits of merit in support of their complaints *before* having the benefit of

---

(…continued)
to testify on behalf of a party in unrelated litigation is not admissible as an admission under FRE 801(d)(2)(C), unless the expert witness is an agent of the party and is authorized to speak on behalf of that party. We are not persuaded by the *Kirk* rationale. The actual language of the rule does not require that the person making the statement be an "agent" of the party; rather, it only requires that the party authorize the person to make a statement concerning the subject. "FRE 801(d)(2)(C) applies to a person who is not an agent but is 'authorized' to speak." *Glendale Fed Bank, FSB*, *supra* at 424.

[7] We agree with the Court of Appeals that an affidavit of merit is not admissible under MRE 801(d)(2)(D) as "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment" because there is no agency relationship between a plaintiff and an expert. The right to control the conduct of the agent with respect to the matters entrusted to him or her is fundamental to the existence of an agency relationship. *St Clair Intermediate School Dist v Intermediate Ed Ass'n/MEA*, 458 Mich 540, 557-558; 581 NW2d 707 (1998). Although an affidavit of merit is provided upon the plaintiff's request, the affidavit is prepared by an independent expert and the plaintiff has no right to control the content of the expert's statements.

13

discovery, we cannot conclude that the nature of this obligation relieves them altogether of accountability for the substance of these statements. The purpose of the affidavits of merit is to deter frivolous medical malpractice claims by verifying through the opinion of a qualified health professional that the claims are valid. *Scarsella v Pollak*, 461 Mich 547, 548, 551; 607 NW2d 711 (2000). The purpose of the statutory obligation to submit affidavits of merit would be defeated, or at least significantly undermined, if there were to be no accountability-- including potentially adverse consequences-- for statements made on the basis of information available at the time the affidavits of merit were submitted. When confronted with admissions made in their affidavits of merit, the plaintiffs may reasonably point out to the fact-finder that they had access to a more limited factual development before discovery and explain the basis for any changes in opinion.[8]

Furthermore, we disagree with the Court of Appeals that the affidavits of merit submitted by plaintiff are inadmissible as impeachment evidence. While evidence used exclusively for impeachment purposes is not substantively admissible without an independent basis, and therefore may not be introduced as an exhibit for the jury's consideration, *People v Roders*, 388 Mich 513, 519; 201 NW2d 621 (1972); *People v Wythcerly*, 172 Mich App 213, 220; 431 NW2d 463 (1988); *People v Alexander*, 112 Mich App 74, 77; 314 NW2d 801 (1981), here,

---

[8] See *Collins*, *supra* at 782.

14

the affidavits of merit are admissible into evidence because they are party-admissions.  MRE 613, which sets forth a set of preconditions for impeachment, provides:

> (a) Examining Witness Concerning Prior Statement.  In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request it shall be shown or disclosed to opposing counsel and the witness.

> (b) Extrinsic Evidence of Prior Inconsistent Statement of Witness.  Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.  This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

Before attempting to impeach a witness by offering extrinsic evidence of a prior inconsistent statement, a litigant must lay a proper foundation in accordance with the court rule.  *Merrow v Bofferding*, 458 Mich 617, 631; 581 NW2d 696 (1998); *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995); *People v Weatherford*, 193 Mich App 115, 122; 483 NW2d 924 (1992).  To do so, the proponent of the evidence must elicit testimony inconsistent with the prior statement, ask the witness to admit or deny making the first statement, then ask the witness to admit or deny making the later, inconsistent statement, allow the witness to explain the inconsistency, and allow the opposite party to cross-examine the witness.  MRE 613(b); *People v Malone*, 445 Mich 369, 382-385; 518 NW2d 418 (1994); *Weatherford*, *supra* at 122.  However, "extrinsic evidence may

15

not be used to impeach a witness on a collateral matter . . . even if the extrinsic evidence constitutes a prior inconsistent statement of the witness, otherwise admissible under MRE 613(b)." *People v Rosen*, 136 Mich App 745, 758; 358 NW2d 584 (1984).

The affidavits of merit provided by plaintiff's experts were inconsistent with their testimony at trial and were not offered on a collateral matter. Graham, Borson, and Wassermann clearly shifted the focus of their testimony against Albaran, and to a lesser extent against Hidalgo, after plaintiff and Shah settled. In their affidavits of merit, none of the experts stated that Albaran or Hidalgo violated the standard of care because they failed to diagnose or recognize TTP or failed to follow up on the DIC screen results. In her affidavit of merit, Borson claimed that Shah had a duty to diagnose TTP and follow up on the blood tests. However, at trial, Borson testified that *all* of Barnett's treating doctors had been at fault for failing to review and follow up on Barnett's blood test results. Graham, who made no mention of any error in diagnosis regarding the blood disorder in his affidavit of merit, testified at trial that Albaran had violated the standard of care by failing to review the DIC screen results and recognize that Barnett was suffering from TTP. Furthermore, although Wassermann made no reference to this fact in his affidavit, Wassermann testified that Hidalgo violated the standard of care by failing to order a hematology consultation when he first saw Barnett, rather than waiting until the next day.

16

We do not believe that the changes in the experts' testimony at trial were simply the result of additional information they gained through the course of discovery, but if they were, that was for plaintiff to argue. The experts' affidavits of merit and trial testimony were based on the medical and autopsy records, information that had not changed during the course of discovery. Graham claimed that Albaran's statement in his deposition that Albaran had not reviewed the DIC screen results was new information that had not been available at the time of Graham's affidavit of merit. However, this information was already known to Graham; he testified that the medical records-- records that were available to him before providing his affidavit-- did not show that Albaran received the test results and therefore that Albaran had not reviewed the test results. Similarly, virtually all the information relied on by Borson and Wassermann for their trial testimony had been available at the time they submitted their affidavits of merit.

Therefore, the affidavits of merit were admissible as admissions by a party opponent under MRE 801(d)(2)(B) and (C) because they are statements concerning which plaintiff has manifested an adoption or belief in their truth or, alternatively, statements by a person authorized by plaintiff to make a statement concerning the subjects listed in MCL 600.2912d(1). Moreover, the affidavits of merit were admissible as impeachment evidence because they constitute prior inconsistent statements of plaintiff's expert witnesses.

## B. AFFIDAVITS REFERENCING SETTLING DEFENDANT

MCL 600.2957 and MCL 600.6304, two sections enacted or amended as part of the 1995 tort reform legislation, generally provide that the trier of fact in a tort action shall determine the comparative negligence of each person who contributed to the plaintiff's injury, regardless of whether that person is, or could have been, named as a party. MCL 600.2957 provides:

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

> (2) Upon motion of a party within 91 days after identification of a nonparty, the court shall grant leave to the moving party to file and serve an amended pleading alleging 1 or more causes of action against that nonparty. A cause of action added under this subsection is not barred by a period of limitation unless the cause of action would have been barred by a period of limitation at the time of the filing of the original action.

> (3) Sections 2956 to 2960 do not eliminate or diminish a defense or immunity that currently exists, except as expressly provided in those sections. Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties. If fault is assessed against a nonparty, a finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action.

In relevant part, MCL 600.6304 provides:

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all

18

parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:

(a) The total amount of each plaintiff's damages.

(b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability under section 2925d, regardless of whether the person was or could have been named as a party to the action.

(2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed.

\* \* \*

(4) Liability in an action to which this section applies is several only and not joint. Except as otherwise provided in subsection (6), a person shall not be required to pay damages in an amount greater than his or her percentage of fault as found under subsection (1).  This subsection and section 2956 do not apply to a defendant that is jointly and severally liable under section 6312.

\* \* \*

(6) If an action includes a medical malpractice claim against a person or entity described in section 5838a(1), 1 of the following applies:

(a) If the plaintiff is determined to be without fault under subsections (1) and (2), the liability of each defendant is joint and several, whether or not the defendant is a person or entity described in section 5838a(1).

(b) If the plaintiff is determined to have fault under subsections (1) and (2), upon motion made not later than 6 months after a final judgment is entered, the court shall determine whether all or part of a party's share of the obligation is uncollectible from that party, and shall reallocate any uncollectible amount among the other parties . . . .

The fact-finder's obligation to apportion fault among all liable persons is not altered by the creation of joint and several liability in medical malpractice actions. See *Estate of Shinholster v Annapolis Hosp*, 471 Mich 540, 549, 551; 685 NW2d 275 (2004);[9] *Salter v Patton*, 261 Mich App 559, 565; 682 NW2d 537 (2004).[10] Because under these provisions the jury is required to allocate fault of all persons, parties as well as nonparties, we believe that a jury may hear evidence regarding every alleged tortfeasor who has been involved, even parties who have been dismissed, and by the same token, that a party must be permitted to refer to the involvement of nonparties.

The Court of Appeals decision that the admission of the unredacted affidavits of merit referencing Shah constituted error requiring reversal fails to consider the language of the above statutes and restricts the parties from revealing

---

[9] This Court has held that

[s]ubsection 6304(1)(b) is unambiguous and calls for the trier of fact to assess by percentage "the total fault of *all* persons that contributed to the death or injury, *including each plaintiff*," (emphasis added), as long as that fault constituted a proximate cause of the plaintiff's injury and subsequent damage. [*Estate of Shinholster, supra* at 551.]

[10] MCL 600.2957 and MCL 600.6304

provide that the fact-finder shall allocate liability among nonparties even in medical malpractice cases where the plaintiff is not at fault before joint and several liability is imposed on each defendant. Further, once joint and several liability is determined to apply, joint and several liability prohibits the limitation of damages to one's percentage of fault. [*Salter, supra* at 565.]

the existence of a potentially liable nonparty. In deciding that the admission of the affidavits of merit referencing Shah was error, the Court of Appeals relied on *Brewer* and *Clery*.

In *Brewer*, in an attempt to strengthen its policy of encouraging settlements, this Court held that

> [w]hen there is no genuine dispute regarding either the existence of a release or a settlement between plaintiff and a codefendant or the amount to be deducted, *the jury shall not be informed of the existence of a settlement or the amount paid*, unless the parties stipulate otherwise. Following the jury verdict, upon motion of the defendant, the court shall make the necessary calculation and find the amount by which the jury verdict will be reduced. [*Brewer, supra* at 679 (emphasis added).]

We determined in *Brewer* that because the uncertainty of juror reaction to evidence of settlements could be prejudicial to both parties, the potential admission of such evidence constitutes a foreseeable deterrent to settlements between plaintiffs and codefendants. *Id.* Because MCL 600.2957 and 600.6304 allow the parties to refer to the involvement of nonparties and because *Brewer* does not prohibit *any* reference to a nonparty, but merely prohibits mentioning the existence of a settlement or its amount, we conclude that *Brewer* can be reconciled with the above statutes. Thus, the Court of Appeals erred by completely restricting the parties from revealing the existence of a potentially liable nonparty. Moreover, the Court of Appeals reliance on *Brewer* was misplaced because, although the unredacted affidavits listed Shah as a defendant, the jury was never informed that plaintiff and Shah had reached a settlement.

21

In *Clery*, the trial court instructed the jury that certain parties had been dismissed before trial, without informing it that the parties were dismissed after a settlement had been reached. Relying on *Brewer*, the Court of Appeals found error requiring reversal in the trial court's instruction and held that, unlike in *Brewer*, where the concern had been the "misinterpretation of true facts," in *Clery* there had been an "added danger that the jury was in a position to misinterpret based only upon partial and misleading facts."[11] *Clery, supra* at 62. The Court of Appeals held that the danger of prejudice and confusion was greater because the jury was left to speculate regarding the missing parties' whereabouts, the amount of a possible settlement, and the potential fault of the missing parties. *Id.* at 62-63.

The Court of Appeals conclusion that *Clery* entirely prohibits the parties from referring to a nonparty potentially at fault is simply too broad. *Clery* merely stands for the proposition that the parties may not inform the jury that a nonparty was *dismissed* from the lawsuit. Under the provisions of MCL 600.2957 and 600.6304, a defendant may pursue a legitimate defense by arguing that fault rests with a nonparty, regardless of whether the nonparty is, or could have been, named

---

[11] The Court of Appeals noted:

> At least in *Brewer* the facts imparted to the jury were a complete and accurate recital of the settlement in that case. In the present case, disclosure was but that of a half-truth; the jury was told that the case against the bar and the road commission was dismissed, but they were not told that this was pursuant to settlement of $128,000 and $5,000 respectively. [*Clery, supra* at 62.]

as a party. However, the nonparty fault statutes do not require that the jury be informed about the reason behind a nonparty's absence from the lawsuit. The fact that the nonparty agreed to settle or was dismissed is irrelevant to the determination and allocation of that person's fault. Therefore, to the extent that it prohibits informing the jury that a nonparty has been *dismissed* from the lawsuit, *Clery* is not in conflict with the statutory mandate because it does not entirely prohibit any reference to a nonparty.

Because the jury in the instant case was not actually informed that Shah had been dismissed, the instant facts do not fit within the *Clery* holding. Arguably, however, because the unredacted affidavits of merit listed Shah as a defendant, the jury could have reasonably inferred that Shah had been dismissed from the lawsuit. Even if such an inference would equate with actually informing the jury that Shah was dismissed from the lawsuit, reversal here is not required. Plaintiff failed to show that it was more probable than not that the alleged error was outcome determinative. See *Lukity*, *supra* at 495-496. There was ample evidence showing that Albaran and Hidalgo, as a general surgeon and neurologist, respectively, did not breach the standard of care applicable to their profession by failing to recognize or diagnose TTP, a rare blood disorder usually diagnosed by a hematologist. Furthermore, had this alleged error resulted in prejudicial jury speculation, the jury verdict may conceivably have been unfavorable to *defendants*. After informing the jury that Shah had been dismissed, the jury arguably could have believed that Shah's dismissal was indicative of his lack of

23

fault, and, therefore, Albaran and Hidalgo must have been responsible for Barnett's death.

While the parties are not allowed to inform the jury about the existence of a settlement with a nonparty or its amount, or that the nonparty was dismissed, under MCL 600.2957 and 600.6304, the parties are permitted to introduce evidence referring to a nonparty. We therefore conclude that plaintiff's affidavits of merit referencing a settling defendant are admissible.

## C. DEPOSITION OF SETTLING DEFENDANT

The final issue is whether the admission of Shah's deposition constitutes error requiring reversal. In pertinent part, MRE 804 provides:

> (a) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant--
>
> (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or
>
> (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
>
> (3) has a lack of memory of the subject matter of the declarant's statement; or
>
> (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
>
> (5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means, and in a criminal case, due diligence is shown.

24

A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

* * *

(5) *Deposition Testimony*. Testimony given as a witness in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Thus, when a witness is available at trial, his or her deposition testimony is inadmissible, as hearsay, for substantive purposes.

The Court of Appeals held that the admission of Shah's deposition to show that he reviewed the DIC screen results amounted to error requiring reversal because "[t]his critical information could not have gone before the jury by any other means." *Barnett*, *supra* at 168-169. We respectfully disagree and instead conclude that such error, if any, was harmless. MCR 2.613(A); *Lukity*, *supra* at 495-496. Two other witnesses, Albaran and Bowman, each properly testified that Shah had reviewed the DIC screen results. Thus, this information was available to the jury through alternative and permissible means.

IV. CONCLUSION

We conclude on the basis of MRE 801(d)(2)(B) and (C) and MRE 613 that the affidavits of merit were admissible as substantive evidence because they constitute admissions by a party opponent, and admissible as impeachment

25

evidence because they constitute prior inconsistent statements of plaintiff's expert witnesses. Further, on the basis of MCL 600.2957 and 600.6304, we conclude that plaintiff was permitted to refer to the involvement of nonparties and that the jury therefore could have considered the affidavits of merit that referred to a settling defendant. Finally, we conclude that even if the deposition in this case was improperly used as substantive evidence, the error was harmless because the information was alternatively introduced through other permissible means. Accordingly, we reverse the Court of Appeals judgment.

Stephen J. Markman
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.

Cavanagh, J. I concur in the result only.

Michael F. Cavanagh

26

STATE OF MICHIGAN

SUPREME COURT

WAPEKA B. BARNETT, Personal
Representative of the Estate of James Otha
Barnett, III, Deceased,

Plaintiff-Appellee,

v                                                                           No. 130071

CESAR D. HIDALGO, M.D., CESAR D.
HIDALGO, M.D., P.C.,

Defendants-Appellees,

and

RENATO ALBARAN, M.D., AND RENATO
ALBARAN, M.D., P.C.,

Defendants-Appellants,

and

MUSKESH S. SHAH, M.D., ONCOLOGY &
HEMATOLOGY OF OAKLAND, P.C.,
CRITTENTON HOSPITAL, and CRITTENTON
CORPORATION,

Defendants.
_____

WAPEKA B. BARNETT, Personal
Representative of the Estate of James Otha
Barnett, III, Deceased,

Plaintiff-Appellee,

v                                                                           No. 130073

CESAR D. HIDALGO, M.D., CESAR D.
HIDALGO, M.D., P.C.,

        Defendants-Appellants,

and

RENATO ALBARAN, M.D., AND RENATO
ALBARAN, M.D., P.C.,

        Defendants-Appellees,

and

MUSKESH S. SHAH, M.D., ONCOLOGY &
HEMATOLOGY OF OAKLAND, P.C.,
CRITTENTON HOSPITAL, and CRITTENTON
CORPORATION,

        Defendants.

_____

KELLY, J. (*dissenting*).

I dissent from the majority's decision to reverse the Court of Appeals judgment. It was not harmless error to allow the unredacted affidavits of merit into evidence.

In *Clery v Sherwood*,[1] the plaintiff brought a wrongful death action against Timothy Sherwood, Jeffrey Pratt, Cass Leonard, the Stage Coach Stop Bar, and the Clinton County Road Commission. *Clery v Sherwood*, 151 Mich App 55, 59; 390 NW2d 682 (1986). Before trial, a settlement was reached with the bar and road commission, and those parties were dismissed from the case. *Id.* The action

_____

[1] 151 Mich App 55; 390 NW2d 682 (1986).

2

proceeded against Sherwood, Leonard, and Pratt. At trial, the court instructed the jury that plaintiff's complaint originally listed the bar and road commission as defendants, but that those parties had been dismissed before trial began. *Id*. at 60.

The Court of Appeals held that the instruction was erroneous and required reversal. *Id.* at 62-63. Specifically, the panel applied the rationale in *Brewer*[2] and opined that a danger existed that the jury could misinterpret the court's instruction. *Id.* at 62. The Court of Appeals explicitly rejected the claim that the error was harmless, concluding that "the potential prejudice of this instruction is so great that any guess at its impact on the jury's verdict is speculative at best." *Id.* at 63.

I believe that the Court of Appeals in *Clery* properly concluded that it is not harmless error to instruct a jury that a nonparty has been dismissed from a lawsuit. I believe the rationale in *Clery* applies with equal force to the instant case. The unredacted affidavits of merit listed Dr. Shah as a party to the suit. However, the judge instructed the jury that Dr. Shah was not a party to the action. The clear inference was that Dr. Shah had been dismissed from the lawsuit.

---

[2] *In Brewer v Payless Stations, Inc*, 412 Mich 673, 679; 316 NW2d 702 (1982), this Court determined that, as a matter of public policy, "[w]hen there is no genuine dispute regarding either the existence of a release or a settlement between plaintiff and a codefendant or the amount to be deducted, the jury shall not be informed of the existence of a settlement or the amount paid, unless the parties stipulate otherwise." Specifically, this Court noted that keeping evidence of a settlement from the jury creates less confusion, promotes more predictability, and enhances this Court's policy of encouraging settlements. *Id.* at 678-679.

3

The majority recognizes that the jury reasonably could have inferred from the unredacted affidavits of merit that Dr. Shah had been dismissed from the lawsuit. However, it concludes that the error, if any, is harmless. The majority opines that the jury arguably could have believed that Dr. Shah's dismissal indicated his lack of fault and, therefore, that defendants must have been responsible for Mr. Barnett's death.

However, it is equally possible that the jury believed that (1) Dr. Shah's dismissal was the result of a settlement, (2) that the settlement was indicative of Dr. Shah's fault, and (3) that, because Dr. Shah was at fault, defendants were not responsible. The list of possibilities for prejudice is lengthy. As a result, because the potential prejudice is so great, the inference that Dr. Shah was dismissed from the lawsuit cannot be harmless.

Accordingly, just as the Court of Appeals in *Clery* determined that the erroneous instruction warranted reversal, I conclude that the unredacted affidavits of merit in the instant case warrant reversal.

Marilyn Kelly

4