# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM A. ROYE, JR.,

Plaintiff-Appellant,

v

PAUL R. EHRMANN, D.O., and FAMILY
HEALTH CARE CENTER,

Defendants-Appellees.

UNPUBLISHED
January 27, 2015

No. 318419
Oakland Circuit Court
LC No. 2011-122068-NH

Before: DONOFRIO, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff appeals as of right a trial court order granting summary disposition in favor of defendants under MCR 2.116(C)(10) on grounds that plaintiff failed to proffer expert testimony to support the causation element of his claim. For the reasons set forth in this opinion, we affirm.

## I. FACTS

In September 2009, plaintiff suffered a laceration on his face. On October 15, 2009, plaintiff went to his family doctor, defendant Dr. Paul Ehrmann for treatment. Plaintiff had subsequent follow-up appointments with Dr. Ehrmann through December 2009 and Dr. Ehrmann eventually referred plaintiff to a plastic surgeon. Plaintiff ultimately presented to a dermatologist who performed a biopsy that showed advanced squamous cell cancer. Thereafter, plaintiff underwent surgery, radiation treatment, and chemotherapy. According to plaintiff, he has been cancer-free since November 2010.

In September 2011, plaintiff commenced this medical malpractice action against Dr. Ehrmann and his practice, defendant Family Health Care Center, alleging that Dr. Ehrmann breached the standard of care for a family practitioner by failing to order a biopsy or refer him to a dermatologist during the initial and follow-up examinations. Plaintiff alleged that as a direct and proximate cause of the 60-day delay in treatment, his cancer spread, thereby increasing the treatment he needed and increasing the likelihood of an early death from metastatic cancer. Plaintiff filed an affidavit of merit from Dr. William Hulesch, also a family practitioner, in support of his complaint.

-1-

On April 16, 2013, defendants moved for summary disposition under MCR 2.116(C)(10) or, alternatively, a *Daubert*[1] hearing regarding Dr. Huelesch's qualifications to testify regarding whether the 60-day delay in diagnosis had any effect on plaintiff's treatment, outcome, or prognosis. In support of their motion, defendants submitted the March 15, 2013 deposition of Dr. Hulesch and the February 19, 2012 deposition of Dr. Mack Sullivan, a plastic surgeon who was involved in plaintiff's treatment. Defendants also filed an affidavit of their expert witness, Dr. Joel Appel, a board-certified physician in internal medicine and medical oncology. Dr. Appel averred that a 60-day delay in diagnosis would not have made any difference in plaintiff's treatment, outcome, or prognosis.

In a response filed on May 14, 2013, plaintiff alleged that he has been cancer-free since November 2010. In addition to the two depositions that were filed with defendants' motion, plaintiff submitted photographs of himself during his treatment and Dr. Hulesch's curriculum vitae and affidavit of merit. Plaintiff opposed defendants' motion asserting that the evidence clearly established that Dr. Hulesch was qualified to offer an expert opinion regarding causation.

At a hearing on June 5, 2013, the trial court reserved any ruling regarding summary disposition until after it conducted a *Daubert* hearing. The trial court conducted the *Daubert* hearing on July 31, 2013, hearing testimony from Dr. Hulesch and Dr. Appel along with several exhibits, including an affidavit from one of plaintiff's treating oncologists, Dr. Jennifer Stromberg. The trial court also considered the depositions referred to in the parties' motion briefs. Plaintiff's counsel acknowledged that plaintiff no longer had cancer, but argued that a 60-day delay in diagnosis resulted in plaintiff undergoing "very serious repairs that deformed his head."

Dr. Hulesch testified that he is a board-certified family physician who resides in Illinois. He reviewed Dr. Ehrmann's records and deposition. He also reviewed the records of plaintiff's subsequent treating physicians, plaintiff's deposition, and Dr. Sullivan's deposition. He understood that plaintiff had a non-healing wound, which was two centimeters by two centimeters in size, when plaintiff first met with Dr. Ehrmann on October 15, 2009. Dr. Hulesch opined that the extensive repairs to plaintiff's head would have been unnecessary if plaintiff was appropriately treated during that visit. The appropriate treatment would have been a referral for a biopsy to confirm if there was skin cancer. The wound or lesion itself could have been removed by a relatively simple benign excision. Dr. Hulesch testified that he found a peer-reviewed article, dated October 15, 2004, in *American Family Physician* that supported his opinion. Dr. Hulesch had no opinion with respect to any oncology issues.

Dr. Appel testified that he is board certified in Michigan in internal medicine and medical oncology. He was familiar with the treatment for squamous cell carcinoma, which is a type of cancer that does not spread rapidly. He reviewed plaintiff's complaint, depositions, and other documents in this case. Dr. Appel opined that a "2 point 2 centimeter squamous cell cancer" is a higher cancer risk, which would not be treated conservatively. A pathologist would be able to establish a litany of changes in the area of a cancer cell such as "inflammatory cells, edema,

---

[1] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

swelling, scarring." A pathologist would measure the cancer lesion differently from a person "eye balling" the lesion.

Dr. Appel testified that another risk factor for plaintiff was that he had a poorly differentiated cancer, meaning that "the cells looked angrier" at the time of the diagnosis. Dr. Appel opined that a 60-day delay in plaintiff's diagnosis would not have made a difference in his treatment because more aggressive treatment would still have been needed. Dr. Appel testified that "based on the literature and based on my assessment of the data, the fact is that [plaintiff] would have required effectively the same therapy as opposed to now."

Following the hearing, the trial court issued a written opinion and order granting defendants' motion for summary disposition. The court reasoned as follows:

> According to Dr. Hulesch, Plaintiff should have been referred to a specialist when he first presented to Defendant. Dr. Hulesch further opined Defendant could not have removed the lesion and performed a biopsy. Although the article upon which Dr. Hulesch relies suggest that removal and/or referral to a specialist is appropriate with this type of cancer, the overwhelming evidence reveals the delay in this case had no impact on Plaintiff's prognosis. Dr. Hulesch admittedly has not participated as a "team member" in the treatment of squamous cell carcinoma, nor is he an expert in statistics relative to the treatment, prognosis and outcome of same. With regard to the article relied upon by Dr. Hulesch, it does not discuss or support a theory a 60-day delay in diagnosis or treatment would have changed Plaintiff's prognosis; nor does the article support a theory that removal or excision of the lesion when Plaintiff first presented to Defendant would have eliminated the need for chemotherapy, radiation, tissue expanders and surgery.

> At the *Daubert* hearing, Defendants' expert Joel Appel, MD testified. Dr. Appel is board certified in internal medicine and oncology. According to Dr. Appel, even if Plaintiff had been diagnosed 60 days earlier, he still would have required surgery, chemotherapy and radiation treatments. Dr. Appel's testimony is supported by a number of studies which he discussed on the record. These studies reveal the subject cancer is not fast-growing and even though the lesion was smaller in diameter at [the] time Plaintiff initially presented to Defendant than it was at the time of removal, Dr. Appel testified Plaintiff still would have underwent the same treatment. This is because the lesion was two by two centimeters in diameter at the time he initially presented to Defendant; according to Dr. Appel, this size lesion falls into the high risk category, thus requiring surgery and treatment. [Footnotes omitted.]

The court cited an affidavit of plaintiff's treating oncologist and noted that "Plaintiff's own treating oncologists are of the opinion that Plaintiff would have undergone the same treatment and outcome even if a diagnosis had been made 60 days earlier." The court concluded, "[b]ecause Plaintiff has no credible expert testimony to support the causation element of his claim, Dr. Hulesch's testimony is unreliable. Consequently, Plaintiff's claim fails as a matter of law."

## II. ANALYSIS

Initially, plaintiff contends that the trial court erred in holding a *Daubert* hearing because he attached Dr. Hulesch's affidavit to his complaint, making the hearing unnecessary.

In a medical malpractice action, the plaintiff must prove that his or her injuries were the proximate cause of the defendant's breach of the applicable standard of care. *Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012). Proximate causation generally encompasses both "cause in fact" and legal causation. *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). In this appeal, we are only concerned with the "cause in fact" element. This element requires a showing that the plaintiff's injury would not have occurred "but for" the defendant's actions. *Id.* at 86-87.

"The purpose of a *Daubert* hearing is to filter out unreliable expert evidence." *Lenawee Co v Wagley*, 301 Mich App 134, 162; 836 NW2d 193 (2013). Whether to conduct a *Daubert* hearing is within the trial court's discretion. *Id.* "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). Considering the trial court's gatekeeping function to determine the reliability of expert testimony, *Lenawee Co*, 301 Mich App at 162, and that a motion for summary disposition under MCR 2.116(C)(10) must be based on substantively admissible evidence, MCR 2.116(G)(6), the trial court did not abuse its discretion in deciding to conduct the *Daubert* hearing before deciding defendants' motion for summary disposition. "Careful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 391 (2004).

Plaintiff also argues that the trial erred in disqualifying Dr. Hulesch as an expert witness with regard to causation.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Edry*, 486 Mich at 639. "However, when the trial court's decision to admit evidence involves a preliminary question of law, the issue is reviewable de novo, and admitting evidence that is inadmissible as a matter of law constitutes an abuse of discretion." *Barnett v Hidalgo*, 478 Mich 151, 159; 732 NW2d 472 (2007).

MRE 702 governs testimony by expert witnesses and it provides as follows:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 does not necessarily require that the proponent of expert testimony present peer-reviewed, published literature to establish the reliability of expert testimony. *Edry*, 486 Mich at 641. However, the trial court in this case determined that the literature Dr. Hulesch

relied upon did not support his theory that a 60-day delay in diagnosis or treatment would have changed plaintiff's prognosis or that "the removal or excision of the lesion when Plaintiff first presented to Defendant would have eliminated the need for chemotherapy, radiation, tissue expansions and surgery." The literature indicated that the key to diagnosing skin cancer is for the physician to have a high degree of suspicion. It indicates that enlarging or symptomatic lesions that are not clearly benign should be excised or biopsied to determine appropriate treatment. However, it does not address the effect of a delay in diagnosis or treatment.

In addition, it is clear from Dr. Hulesch's testimony at the *Daubert* hearing that he could not offer any opinion with respect to oncology issues. Dr. Hulesch testified that he never performed the type of surgery, including the use of expanders to repair the skin that Dr. Sullivan performed on plaintiff. Further, he had not served on a team that administrates chemotherapy or radiation therapy for squamous cell carcinoma.

Dr. Hulesch's deposition is consistent with this testimony. Dr. Hulesch did not testify that the bump sustained by plaintiff exacerbated his cancer, but rather agreed that it was a fortuitous circumstance that led to plaintiff seeking treatment. Dr. Hulesch indicated that plaintiff's lesion did not really present an oncology problem, but rather that "[i]t's probably one that I would remove personally if I think about. I think either plastic surgery I would substitute for oncology or derm, either one." Dr. Hulesch indicated that he did not hold himself out as an expert regarding statistics associated with the prognosis and outcome of squamous cell carcinoma. Dr. Hulesch's opinion regarding the effect of delay was that, "I think a less than two-centimeter lesion or a two-centimeter lesion would have a primary removal and would not require the subsequent tissue expanders, et cetera, that he required with the removal of an eight-centimeter lesion." The basis for his opinion was that "I take off lesions at two centimeters or less, and all of my plastic surgeons would easily do that without the major intervention surgery that he required later."

Plaintiff's expert offered opinion testimony on the proper course of treatment for plaintiff's lesion. He did not offer, nor was he qualified to offer, testimony concerning causation—i.e. whether the 60-day delay in treatment altered plaintiff's cancer treatment or the outcome of the treatment. Indeed, without any oncology experience, Dr. Hulesch could not opine on whether the 60-day delay was a cause in fact of plaintiff's need for chemotherapy, radiation therapy, tissue expansions, and surgery. Rather, plaintiff's oncologists averred that plaintiff would have undergone the same treatment and had the same outcome even if there had not been a 60-day delay in the diagnosis. Thus, plaintiff failed to offer any admissible evidence to support the causation element of his malpractice claim and the trial court did not abuse its discretion in excluding Dr. Hulesch's testimony pursuant to MRE 702.

Moreover, plaintiff failed to establish that Dr. Hulesch was able to offer an opinion regarding causation based on reliable principles and methods. MCL 600.2955(1) provides as follows:

> (1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion

and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

Although the trial court did not address each statutory factor separately, it considered the lack of supporting literature for Dr. Hulesch's opinion, Dr. Hulesch's lack of experience in the treatment of squamous cell carcinoma, Dr. Hulesch's lack of expertise in relevant statistics, and the opinions of physicians, including defendants' expert and plaintiff's treating physicians, who practice in the field of oncology. As with the trial court's application of MRE 702, plaintiff has not established any basis for concluding that the trial court's evidentiary decision was an abuse of discretion under MCL 600.2955(1). Plaintiff merely asserts in his brief that Dr. Hulesch has excellent credentials and an opinion that differs with defendants' opinions and views. This is insufficient to establish that the trial court abused its discretion in finding that Dr. Hulesch was not competent to offer reliable expert opinion regarding causation.

In sum, the trial court did not abuse its discretion in disqualifying plaintiff's proffered expert witness. Accordingly, the court properly granted summary disposition in favor of defendants.

-6-

Affirmed. No costs awarded. MCR 7.219(A).

/s/ Pat M. Donofrio
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens