HATHAWAY, J.
(dissenting). I respectfully dissent from the majority’s decision to dismiss plaintiffs medical malpractice action with prejudice. The majority holds that plaintiffs affidavits of merit (AOMs) were defective, that they cannot be amended pursuant to MCL 600.2301, and that plaintiffs complaint must therefore be dismissed with prejudice. The majority’s conclusions are erroneous because plaintiffs AOMs were not defective and even in cases involving AOMs with content defects, MCL 600.2301 clearly provides relief. Moreover, the plain language of the AOM statute, MCL 600.2912d(1), does not contemplate, let alone require, that a plaintiffs complaint be dismissed with prejudice for defects contained in an AOM. Thus, the majority’s decision ignores the plain language of the relevant statutes. The majority abandons the rule of law and reaches its result by rewriting the applicable statutes. Accordingly, I dissent.
I. THE REQUIREMENTS OF THE AOM STATUTE
At issue is whether plaintiffs AOMs met the require *98 ments of MCL 600.2912(1(1), the AOM statute. To correctly resolve this issue, we must first examine the language of the AOM statute and determine its correct interpretation. In examining this statute, we follow the established rules of statutory construction. The purpose of statutory construction is to discern and give effect to the intent of the Legislature.[1] In doing so, we first look to the actual language of the statute.[2] If a statute is clear and unambiguous, it must be enforced as written and no further judicial construction is allowed.[3] Simply stated, we must avoid a construction that would render any part of the statute nugatory,[4] and similarly, we are “not free to add language to a statute or to interpret a statute on the basis of this Court’s own sense of how the statute should have been written.”[5] Further, a statute must be read as a whole,[6] and while individual words and phrases are important, the words and phrases should be read in the context of the entire legislative scheme.[7]
MCL 600.2912d, the AOM statute, provides in pertinent part:
(1) Subject to subsection (2), the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiffs attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiffs attorney reasonably be *99 lieves meets the requirements for an expert witness under [MCL 600.2169]. The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiffs attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
(a) The applicable standard of practice or care.
(b) The health professional’s opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.
(c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.
(d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.
The majority focuses on the requirements of subdivision (d), which states that the AOM shall contain a statement of “[t]he manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.” In this case, plaintiff submitted two separate AOMs.[8] The majority holds that these AOMs were deficient because they “failed to provide any statement of the manner in which the breach of the standard of care was the proximate cause of the injury alleged.”[9] This conclusion is disingenuous because the plaintiffs AOMs did contain statements *100 regarding causation. The statements were just not made to the level of exacting detail that the majority asserts is required by the statute. However, the majority’s interpretation of what is required by MCL 600.2912d, the AOM statute, is erroneous.
In analyzing the AOM statute, we must be mindful that the Michigan Legislature has enacted many statutes requiring that a party detail certain facts or elements of a claim with varying levels of heightened specificity. For example, the Legislature used the phrase “with specificity” in MCL 333.17015(10), MCL 333.22231(4), and MCL 769.1a(8). The phrase “stating specifically” was used in MCL 38.416 and MCL 500.8133(3). The Legislature mandated in MCL 38.14, MCL 125.1510(1), MCL 408.1027(2)(b), MCL 462.319(l)(a), MCL 600.557b(2), and MCL 600.6461(2) that a “detailed statement” be made; required a “full statement” in MCL 224.25, MCL 491.920(3), and MCL 500.424(2); required a “complete statement” in MCL 14.283(b) and MCL 462.2(2); and required a “full and complete statement” in MCL 247.172, MCL 324.51904, and MCL 390.758.
The Legislature chose not to incorporate any of these phrases heightening the level of specificity in the AOM statute. If the Legislature had chosen to incorporate such qualifying language in MCL 600.2912d(1), then the majority might have a basis for its conclusion. However, MCL 600.2912d(1) is silent concerning the level of specificity with which the information in an AOM must be conveyed. Nothing in the plain language of this statute mandates the heightened level of specificity that the majority demands, and this Court is not free to add words or phrases to a statute. Thus, the requirement that the AOM “shall contain a statement *101 of each of the following” simply means what it says.[10] The statute requires that “a statement” must be made, not a “detailed statement,” “a complete statement,” or a “full explanatory statement.”
Moreover, the majority distorts the word “manner” as used in MCL 600.2912d(1)(d). [11] The majority opines that the word “manner” requires a detailed statement of “how” the breach caused the injury:
We have often said that it is insufficient to simply state the result when required to state the manner in which there was a breach: The answer to “How was the standard of care breached?” is never “The standard of care was breached.” Similarly, answering the question “How was the breach the proximate cause of the injury ?” requires more than “The breach caused the injury. ”[12]
However, this conclusion is inconsistent with how the word “manner” has been interpreted in other statutes such as MCL 28.258(12)(b), MCL 52.202(1), and MCL 52.205. Our courts have consistently interpreted the word “manner” as used in relation to those statutes as allowing for a single word description such as “homicide,” “suicide,” or “accident.” In People v Williams, the Court of Appeals wrote:
Over the next two days Ashton’s condition continually deteriorated. Ashton died on November 10, 2003. An autopsy revealed that the cause of death was loss of consciousness caused by brain swelling. The Medical Examiner determined that Ashton had been violently shaken, causing his head to snap back and forth. The Medical Examiner concluded that the manner of death was homicide.[13]
*102 See also, Maiden v Rozwood, 461 Mich 109, 115; 597 NW2d 817 (1999) (“[T]he ‘manner of death was an accident.’ ”) (citation omitted); People v Bailey, 451 Mich 657, 664; 549 NW2d 325 (1996) (“ ‘The manner of death is homicide.’ ”) (citation omitted); People v Schmitt, unpublished opinion per curiam of the Court of Appeals, issued July 31, 2007 (Docket No. 264176), p 2 (ZAHRA, EJ., dissenting) (“The medical examiner determined the manner of Richard’s death to be a homicide . . . .”), rev’d 480 Mich 963 (2007); and People v Small, unpublishaed opinion per curiam of the Court of Appeals, issued December 28, 1999 (Docket No. 205544), p 1 (“The assistant medical examiner testified that the cause of death was multiple gunshot wounds and that manner of death was homicide.”).
Thus the use of the word “manner” in the AOM statute does not mandate a detailed description of how the breach caused the injury; rather the manner in which the breach was the proximate cause of the injury can be set forth in a similarly succinct description such as “the malpractice caused the death” or “the breaches of the standard of care caused the death,” or “the death was caused by the breaches of the standard of care.” Thus, all that MCL 600.2912d(1)(d) requires is a statement that the breach of the standard of care caused the result. To require the parties to provide further description creates a requirement not found in the language of the statute.
Moreover, the majority’s ruling transforms an AOM into something that it is not. The AOM statute is one part of a larger statutory scheme for malpractice claims, and it must be read in the context of that larger legislative scheme. As set forth by the clear language of MCL 600.2912d(1), an AOM is designed only to act as certification that the claim is supported by the opinion *103 of a qualified expert. The statute states that the plaintiff “shall file ... an affidavit of merit signed by a health professional who the plaintiffs attorney reasonably believes meets the requirements for an expert witness .... The affidavit of merit shall certify that the health professional has reviewed the notice [of intent] . . . concerning the allegations contained in the notice . . . ,”[14] Thus, an AOM is intended to function as a certification that the allegations contained within the notice of intent (NOI) are meritorious. An AOM is filed with the complaint and is not the notice pleading. The NOI is the notice pleading. The AOM serves as certification that the allegations of the claim are meritorious, and its only role is to deter the filing of unsupported claims. By failing to read the AOM statute in its entirety and in the context of the malpractice statutory scheme, the majority simply misconstrues the statute.
The majority compounds its error by focusing solely on the statements made in the AOM, rather than reading the AOM in concert with the NOI, as contemplated by the AOM statute. The AOM statute requires that “[t]he affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiffs attorney concerning the allegations contained in the notice . .. .”[15] As evidenced by this plain language, an AOM is not a standalone document. Rather, it is to be read in concert with the NOI. The statute requires that the expert review the NOI and certify that he or she supports allegations contained therein, and while the statute requires the expert to make a statement on proximate causation, it does not require that the expert repeat the contents of the NOI in the AOM.
*104 II. THE SUFFICIENCY OF PLAINTIFF’S AFFIDAVITS OF MERIT
In this case, the NOI set forth in detail the nature of the claim and how the plaintiffs decedent, Edris Ligons, died. From the pleadings, plaintiffs allegations appear to be relatively straightforward and uncomplicated. The NOI and AOMs alleged that professional negligence occurred during a visit to defendant Crittenton Hospital’s emergency room, where Ligons was seen by defendant David Bruce Bauer, M.D. Plaintiff claimed that Ligons had suffered a perforation of her colon during a recently performed colonoscopy and that she developed sepsis as a result of the perforation. Ligons went to the emergency room for follow-up treatment, and plaintiff claimed that Dr. Bauer failed to admit her to the hospital for the proper diagnostic testing and treatment. Plaintiff further claimed that this improper treatment allowed the sepsis to become overwhelming, leading to multiple organ failure, causing Ligons’s death. The NOI set forth the factual background of plaintiffs claim:
Edris Ligons was a 54-year-old woman, with a history of colon polyps, with one atypical polyp found on a previous colonoscopy. She came to Crittenton Hospital for an outpatient follow-up colonoscopy on January 14, 2002. Dr. Tayeb noted during the procedure that the colon was very tortuous and pressure had to be applied to reach the cecum. The clinical diagnosis was diverticulosis and hemorrhoids.
On January 22, 2002 Mrs. Ligons presented to the Emergency Department at Crittenton with a four-day history of vomiting, diarrhea, chills, and fever. She had a fever of 102.4. She had abdominal tenderness on examination. She had a [white blood cell count] of 15,400. An abdominal x-ray showed an abnormal gas pattern with mildly dilated small bowel loops, and paucity of gas or bowel content in the colon. The report indicated that this could reflect early or partial bowel obstruction. The radi *105 ologist specifically recommended progress views. She was treated for gastroenteritis and dehydration. She was given antibiotics and fluids. She was discharged within six hours.
She went to Dr. Tayeb’s office on the 23rd due to severe pain. She was immediately sent to the Emergency Department. Examination revealed changes consistent with peritonitis because of a perforated colon. She developed sepsis. Exploratory laparatomy revealed an extensive pelvic abscess, and surgical resection was not possible. Despite extensive medication, the sepsis that developed due to the perforated colon led to multiple organ failure and death on January 29, 2002.
Plaintiffs supplemental NOI further stated:
As a direct and proximate result of the negligence and malpractice alleged above Edris Ligons experienced conscious pain and suffering and ultimately died due to the negligence. Specifically, had Dr. Bauer admitted the patient to the hospital on January 22, 2002 and had appropriate consults been obtained including surgery and [gastrointestinal] and had progress X-rays been obtained the patients [sic] peritonitis would have been diagnosed much earlier. The perforated] colon would have been detected and surgery would have been performed much earlier. This would have avoided the overwhelming sepsis that led to the multi organ system failure and ultimately death.
The AOM signed by Dr. Fred Thomas certified that he had reviewed the NOI and all the medical records concerning the allegations contained in the notice and concluded, “It is my opinion that had the defendants admitted the patient to the hospital on January 22, 2002, and obtained the appropriate consults on January 22, 2002, as outlined in Dr. Sternbach’s affidavit that Edris Ligons would not have died.” The AOM signed by Dr. George Sternbach similarly certified his review and concluded, “As a direct and proximate cause of the imprudent acts and omission committed by the individuals identified herein, Edris Ligons, died.”
*106 While I do not opine on whether plaintiff would ultimately prevail on the merits, it is pure folly to suggest that these statements do not meet the requirements of MCL 600.2912d(1)(d). To reach such an erroneous conclusion, the majority effectively ignores the statements that the “per[forated] colon would have been detected and surgery would have been performed much earlier” and “[t]his would have avoided the overwhelming sepsis that led to the multi organ system failure and ultimately death.” The majority further ignores the Dr. Thomas’s certification that he had reviewed that statement and the supporting medical records and ignores his opinion that “had the defendants admitted the patient to the hospital on January 22, 2002, and obtained the appropriate consults on January 22, 2002, as outlined in Dr. Sternbach’s affidavit that Edris Ligons would not have died.”
The majority’s conclusion that the contents of the NOI must be repeated in the AOM is at odds with the plain language of the statute. Plaintiffs AOMs met the requirements of MCL 600.2912d(l)(d).[16] The AOMs, when read in concert with the NOI, set forth a “statement” regarding the “manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.” Nothing more is required by the statute. Thus, plaintiffs AOMs were not defective.
III. DISMISSAL OF A CASE INVOLVING AN AOM WITH CONTENT DEFECTS IS NOT REQUIRED BY KIRKALDY
The majority further errs by holding that if an AOM contains any defect, the only possible remedy is dis *107 missal under Kirkaldy v Rim[17] In so opining, the majority expands the ruling of Kirkaldy well beyond its facts and legal conclusion. In Kirkaldy, the plaintiffs AOM was found to be defective because it was not signed by an expert who met the requirements of the expert-witness statute, MCL 600.2169. The plaintiff in Kirkaldy was not seeking relief from a defect in content. Instead, the plaintiff sought the ability to replace an AOM, signed by an unqualified expert, with an entirely new AOM signed by a qualified expert. Thus, Kirkaldy addressed the ability to substitute the original AOM for one signed by an entirely different expert witness. Nothing in Kirkaldy addressed an AOM containing purported defects in content. Rather, the defect at issue in Kirkaldy was that the expert was not qualified to support the claim. Significantly, the plaintiff in Kirkaldy filed a second complaint accompanied by a new AOM signed by a qualified expert. The plaintiff requested that the original case be dismissed without prejudice so that she could pursue the second complaint. This Court simply granted one of the avenues of relief requested by the plaintiff when it dismissed the case without prejudice.
Kirkaldy decided the issue of whether filing the original complaint tolled the period of limitations under MCL 600.5856, and this Court held that even an AOM signed by an unqualified expert tolls the period of limitations. Kirkaldy did not address whether alternative remedies short of dismissal, such as amendment of an AOM, were available under MCL 600.2301. Thus, it is erroneous to state that dismissal is the only remedy for an AOM with content defects because this Court did not address that issue in Kirkaldy.
*108 IV DISMISSAL OF AN AOM WITH CONTENT DEFECTS IS CONTRARY TO THE AOM STATUTE
The proper starting point for identifying the required penalties and available remedies for AOMs with content defects is the language of the AOM statute itself. While MCL 600.2912d(1) mandates that a plaintiff shall not commence an action for medical malpractice without timely filing an AOM, nothing in the plain language of this statute requires or compels dismissal of the case for defects in the AOM. Despite the majority’s contrary conclusion, the AOM statute makes no reference whatsoever to a mandatory dismissal penalty in the event of a defect. Instead, the statute is silent regarding the consequences of filing an AOM that contains content defects. Thus, we must determine whether mandatory dismissal with prejudice was the intent of the Legislature when it enacted MCL 600.2912d.
The legislative history of the AOM statute reveals that the Legislature did not intend for a defect in an AOM to be grounds for dismissal with prejudice. The clearest indicator of this intent is the Legislature’s complete rejection of a “mandatory dismissal with prejudice” clause contained in the original draft of the legislation. The AOM statute was originally introduced as part of Senate Bill No. 270 on January 28, 1993. AOMs (referred to as “certificate[s]” in SB 270 as introduced) were addressed in proposed § 2912d. Proposed § 2912d contained a mandatory dismissal penalty. The bill as introduced linked the NOI and the AOM together. It also provided for dismissal of claims without the benefit of tolling afforded in MCL 600.5856, which in essence would have resulted in a dismissal with prejudice. Section 2912d as introduced stated:
(1) A person shall not commence an action alleging medical malpractice unless the complaint is accompanied *109 by the certificate signed by the person or, if the person is represented by an attorney, by the attorney reflecting that the person has complied with section 2912f [concerning NOIs], If the complaint is not accompanied by the certificate required under this subsection, the complaint does not toll the statute of limitations as provided in section 5856(1).
(2) Except as otherwise provided in this subsection, in an action alleging medical malpractice, the court shall dismiss a claim not included in the notice required under section 2912f. [Emphasis added; formatting altered from strikethrough/insert format to show language as proposed.]
Significantly, while AOMs and NOIs remained linked in the version of the bill actually adopted, the penalty provisions did not survive. There simply were not sufficient votes in the Legislature to enact a statute with such harsh penalties. This unequivocally demonstrates that mandatory dismissal was not the will of the Legislature. Michigan law makes clear that “[w]here the Legislature has considered certain language and rejected it in favor of other language, the resulting statutory language should not be held to explicitly authorize what the Legislature explicitly rejected.”[18] Because the Legislature specifically omitted proposed dismissal language from the enrolled bill, it is unreasonable to conclude that the Legislature intended for courts to reinsert dismissal as the only permissible *110 remedy. The majority’s interpretation of the phrase “shall contain a statement” as meaning “shall dismiss the case if there is a possible defect no matter how minor” is misguided.[19]
V CONTENT DEFECTS IN AN AOM MAY BE CORRECTED
The AOMs in this case were not defective. However, even in cases involving AOMs with content defects, a party who files a defective AOM is entitled to seek relief. The first question is whether a plaintiff is entitled to relief under the former version of MCR 2.118. The majority claims that a plaintiff whose case was pending while the former version of MCR 2.118 was in effect[20] is not entitled to relief under the former rule because an AOM is not a pleading. To reach this conclusion the majority disavows the holding in Barnett v Hidalgo, 478 Mich 151, 161; 732 NW2d 472 (2007), that an AOM is part of a pleading and, therefore, admissible as substantive evidence at trial because it constitutes an admission by a party opponent. However, now the majority claims that because Barnett held that an AOM is only *111 “part of the pleadings,”[21] an AOM is not a “pleading” subject to amendment under MCR 2.118. This distinction is dubious at best, as nothing in former MCR 2.118 stated or suggested that a pleading can be amended but a part of it cannot.
Regardless of whether relief is available under the former court rule, the majority completely disregards MCL 600.2301. Once again, this Court must turn to the actual language of the statute. MCL 600.2301 contains two clear and unambiguous provisions:
The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.
The plain language of this statute imposes a duty that cannot be ignored on all courts of this state. It requires that “[t]he court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.” This is not a discretionary provision. It is a legislative mandate that this Court must follow. Unless substantial rights are affected, the court shall disregard any error or defect at every stage of the action or proceeding. This provision applies to all actions or proceedings. Thus, even if we were to accept the majority’s erroneous conclusion that an AOM is not a pleading, an AOM is nevertheless part of the “action” or “proceeding.” Clearly, the failure to repeat statements already made cannot be characterized as affecting a substantial right. According to the plain language of the *112 statute, this Court must disregard technical defects, such as the ones the majority claims are in plaintiffs AOMs. By failing to do so, the majority ignores a clear and direct mandate imposed on this Court by the Legislature.
Moreover, even in instances in which an AOM contains more substantial defects or substantial rights might be affected, trial courts still have discretion under MCL 600.2301 to afford relief by way of amendment when justice so requires. MCL 600.2301 states that “[t]he court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just. . . .” MCL 600.2301 clearly provides for amendment of more than just pleadings. It allows for amendments of “any process, pleading or proceeding.” An AOM is without question part of the process or proceeding. Thus, an AOM is a document that courts have the power to amend.
The majority claims it can disregard the plain language of MCL 600.2301 by asserting that Freer v White, 91 Mich 74, 76; 51 NW 807 (1892), represents the long-established law in Michigan that amendment of an affidavit is prohibited. However, the majority’s reliance on Freer (discussing “attachment” affidavits used in debtor-creditor disputes in the 1800s) is misguided.[22] In Emerson v Detroit Steel & Spring Co, 100 Mich 127, 132; 58 NW 659 (1894), this Court limited the holding in Freer to its facts and recognized that Freer had not overruled Barber v Smith, 41 Mich 138; 1 NW 992 (1879), which had previously allowed for amendments *113 to attachment affidavits.[23] Accordingly, Freer does not, as the majority claims, support its decision to ignore the plain language of MCL 600.2301.
VI. WHEN COURTS SHOULD ALLOW AMENDMENT OF AN AOM
Next we must determine under what circumstances a court should allow amendment of an AOM with content defects that affect the substantial rights of the parties. While allowing an amendment is a discretionary matter, a court should view a party’s request to amend in light of the statutory directive that amendments should be in “the furtherance of justice, on such terms as are just. . . ,”[24] If failing to allow amendment would result in the dismissal of a plaintiffs case with prejudice, as the majority holds in this case, the result would not be in the furtherance of justice. Such a result slams the courthouse doors in the plaintiffs face, leaving that plaintiff without a forum in which to pursue a claim that an expert has certified as meritorious.
Citizens of this state are entitled to a forum to resolve claims on their merits. Furtherance of justice *114 cannot be achieved without providing citizens access to justice. Access to justice is a cornerstone of our system of jurisprudence, and without it, confidence in the judiciary is lost. Allowing for amendment of an AOM to correct defects in content is in the furtherance of justice. Such relief permits a plaintiff to pursue his or her claim and have it decided on its merits rather than on a hypertechnical reading of an AOM or a misguided reading of the AOM statute.
Unfortunately, instead of following the rule of law, the majority denies the plaintiff in this case access to justice by rewriting the language of the AOM statute in order to come to its result.
VII. CONCLUSION
I respectfully dissent from the majority’s decision to dismiss this medical malpractice action with prejudice. The majority’s conclusions are erroneous because plaintiffs AOMs were not defective and even in cases involving AOMs with content defects, MCL 691.2301 clearly provides relief. Moreover, the plain language of the AOM statute does not contemplate, let alone require, that a plaintiffs complaint be dismissed with prejudice for defects contained in an affidavit. The majority’s decision ignores the plain language of the relevant statutes. The majority abandons the rule of law and reaches its result by rewriting the applicable statutes.

 Potter v McLeary, 484 Mich 397, 410; 774 NW2d 1 (2009), citing Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999).

 Potter, 484 Mich at 410.

 Sun Valley, 460 Mich at 236.

 People v McGraw, 484 Mich 120, 126; 771 NW2d 655 (2009), citing Baker v Gen Motors Corp, 409 Mich 639, 665; 297 NW2d 387 (1980).

 Kirkaldy v Rim, 478 Mich 581, 587; 734 NW2d 201 (2007) (Cavanagh, J., concurring).

 See Sun Valley, 460 Mich at 237.

 Herman v Berrien Co, 481 Mich 352, 366; 750 NW2d 570 (2008).

 Plaintiffs AOM containing a statement from Dr. Fred Thomas provided in pertinent part that “[i]t is my opinion that had the defendants admitted the patient to the hospital on January 22, 2002, and obtained the appropriate consults on January 22, 2002, as outlined in Dr. Sternhach’s affidavit that Edris Ligons would not have died.” Plaintiffs AOM containing a statement from Dr. George Sternbach provided in pertinent part that “[a]s a direct and proximate cause of the imprudent acts and omission committed by the individuals identified herein, Edris Ligons, died.”

 Ante at 77 (emphasis added).

 MCL 600.2912d(1).

 MCL 600.2912d(1)(d) states, “The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.” (Emphasis added.)

 Ante at 77-78 (second emphasis added).

 People v Williams, unpublished opinion per curiam of the Court of Appeals, issued November 29, 2005 (Docket No. 256123), p 2.

 MCL 600.2912d(l) (emphasis added).

 Id. (emphasis added).

 Kirkaldy, 478 Mich 581.

 This is not to suggest or imply that parties are not free to engage in repetition or that being repetitive renders an AOM defective. Parties may he repetitive; however, it is not required by the statute.

 In re MCI Telecom Complaint, 460 Mich 396, 415; 596 NW2d 164 (1999); see also Univ Med Affiliates, PC v Wayne Co Executive, 142 Mich App 135, 140; 369 NW2d 277 (1985) (holding that the legislative history of a statute may be considered, and if it can be shown that certain language was affirmatively rejected, the court should not give the statute a construction that the Legislature plainly refused to give it); Nation v WDE Electric Co, 454 Mich 489, 492-493, 495; 563 NW2d 233 (1997); Miller v State Farm Mut Auto Ins Co, 410 Mich 538, 566; 302 NW2d 537 (1981); and People v Adamowski, 340 Mich 422, 429; 65 NW2d 753 (1954).

 It is ironic that the Legislature refused to enact the most severe penalty, dismissal with prejudice, for a complete failure to file an AOM, yet here, the majority adopts this severe penalty for purported minor content defects.

 On February 16, 2010, this Court amended the court rules to make it clear that AOMs may be amended. Specifically, MCR 2.112(L)(2)(b) as amended now provides in pertinent part that “[a]n affidavit of merit or meritorious defense may be amended in accordance with the terms and conditions set forth in MCR 2.118 and MCL 600.2301.” The majority’s decision to preclude use of the amended rules conflicts with the general rule that “ ‘the norm is to apply the newly adopted court rules to pending actions unless there is reason to continue applying the old rules.’ ” Reitmeyer v Schultz Equip & Parts Co, Inc, 237 Mich App 332, 337; 602 NW2d 596 (1999), quoting Davis v O’Brien, 152 Mich App 495, 500; 393 NW2d 914 (1986); see also People v Jackson, 465 Mich 390; 633 NW2d 825 (2001); 1 Longhofer, Michigan Court Rules Practice (5th ed), §§ 1102.1 and 1102.2, pp 3-4.

 Barnett, 478 Mich at 161.

 Freer has not been cited as authority by any court in this state since 1907.

 Barber favored curing defects in an affidavit by amendment and held that “[t]his power to cure errors and irregularities by amendment is a useful one, if wisely exercised, and when no provision to the contrary is made it applies as fully to attachment suits as to others.” Barber, 41 Mich at 144. The defect at issue in Barber “was not such a defect as to necessarily and at once to destroy the process and put an end to the proceeding, but a defect remediable under the power of the court to correct errors in its proceedings during their progress.” Id. at 145. Accordingly, Barber concluded that “in case the proceeding while open, and at a stage permitting correction by amendment, should be brought into question collaterally, it would not be competent to reject it as void on account of the defect.” Id.-, see also Walden v Crego’s Estate, 288 Mich 564; 285 NW 457 (1939) (holding that statutorily required attachment affidavits that contain defects in content may be corrected by amendment).

 MCL 600.2301.