# STATE OF MICHIGAN

# COURT OF APPEALS

MELISSA A. REICHENBACH,

        Plaintiff-Appellee/Cross-Appellant,

v

JAMES W. REICHENBACH,

        Defendant-Appellant/Cross-
        Appellee.

UNPUBLISHED
March 21, 2017

No. 326355
Clinton Circuit Court
Family Division
LC No. 13-024577-DM

Before: FORT HOOD, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendant appeals and plaintiff cross-appeals from their amended judgment of divorce. Much of this appeal concerns the significance of the prenuptial agreement the parties entered into three days before their wedding. We affirm in part, reverse in part, and remand.

The parties were married in 1995 and filed for divorce in 2013. They had two children, one of whom was an adult by the time of the divorce, and the parties agreed to the custody of the other child. The parties had mutually agreed during the marriage that plaintiff would work from home by raising the children while defendant worked to financially support the family. At the time of the marriage, defendant was president of and owned the William Reichenbach Company (WRC), a company that his father had formed in the 1950s. Several other companies were subsidiaries of WRC, and defendant also owned a number of real estate rental properties.

The prenuptial agreement provided, in relevant part, that each party would retain title to the separate property they identified as owning at the time and all separate property either of them acquired in the future. Paragraph 2(a) specifically identified as separate property:

> [A]ll of the interest which Jim may have in the WILLIAM REICHENBACH COMPANY, including but not limited to ownership of any stock in the company, and any of its subsidiaries or related entities and/or successors in interest, including any entities which may be acquired or created by him in the future, shall be the separate property of Jim. The same shall be true of all other assets identified in either party's net worth statement as set forth on Exhibits A and B, including but not limited to any stocks, bonds, bank accounts, pensions or profit sharing retirement programs, vacant land, duplexes, oil and gas interests, and

-1-

personal property including furniture, furnishings and automobiles, which either party may own prior to the marriage.

Paragraph 4 further specified that, in the event of separation or divorce, "neither party shall request, nor be entitled to, any property settlement, alimony,[1] or other payments from the other party in regard to[2]":

> (a) The separate property of the other party described in paragraph 2.

> (b) Any income rents, or profits or reinvestments of such property; it being the intent of the parties that any property settlement, alimony, or other payments in the event of a divorce shall be determined by considering only certain earned income[3] (if any) received by the parties subsequent to the marriage, and investments and other purchases made with such earned income.

Paragraph 4 also provided that "with respect to any increase in the total value of all of the parties' separate assets, said increase in the total value of all of the parties' separate assets shall be considered a marital asset and shall be equally divided and/or shared by the parties."

At the conclusion of a lengthy trial, the trial court concluded that the prenuptial agreement was valid and enforceable. The trial court found, however, that the separate property could be invaded under MCL 552.401 and MCL 552.23. After an analysis of the factors set forth in *Sparks v Sparks*, 440 Mich 141; 485 W2d 893 (1992), the trial court awarded each party one-half of the total marital estate, which included the invaded separate property. The court held that parties' marital estate, valued at $4,220,479, was to be divided equally, minus offsets and plus credits. The court awarded the parties joint physical and legal custody of the parties' minor child and awarded child support to plaintiff in the amount of $2,475 per month. The court also found that it could statutorily invade the separate property for spousal support and that the prenuptial agreement allowed spousal support from marital property. The court awarded plaintiff rehabilitative spousal support of $5,000 monthly for seven years.[4] The court denied plaintiff's request for $105,000 in attorney fees, finding that she would be going forward with no debt and

---

[1] The term spousal support will be used throughout this opinion, with the exception of quoted material.

[2] The parties appear to believe that the vague and ambiguous term "in regard to" here means something to the effect that the agreement either bars making payments out of the described assets or bars calculating payments that take into account the existence of the described assets.

[3] The agreement does not define "certain earned income," and we have found no case law in Michigan that even uses that specific term.

[4] The court imputed $30,000 in annual income to plaintiff based on its finding that plaintiff could have had income in this amount had she elected to keep one of the parties' income-producing rental properties.

would not have to deplete or seriously impair the assets upon which she was relying for support to pay her attorney fees.

Shortly after the conclusion of trial and the trial court's bench ruling, this Court decided *Allard v Allard*, 308 Mich App 536; 867 NW2d 866 (2014) (*Allard I*). Defendant moved for reconsideration on the basis of *Allard I*, arguing that it barred the invasion of separate property under MCL 552.23, MCL 552.401, and MCL 557.28 where a prenuptial agreement controlled the distribution of property, so he should have received all of his separate property and plaintiff should have been awarded no spousal support. The trial court agreed in part. It deducted the $770,000 premarital value of WRC and the $295,000 premarital value of three real estate rental properties from the marital estate. It found that 40 percent of defendant's income was attributable to separate property that could not be used for spousal support, but that a basis remained for transitional spousal support. It therefore reduced the award of monthly spousal support to $3,000 for seven years.

Initially, defendant argues that the trial court improperly valued Reichenbach Plastering Company. In particular, the evidence established that an irreplaceable key employee had departed from the business, so it would be winding down and closing. Findings of fact, such as a trial court's valuation of particular marital assets, will not be reversed unless clearly erroneous. *Beason v Beason*, 435 Mich 791, 805; 460 NW2d 207 (1990); *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008). An independent valuation expert applied three different approaches to valuing the company, and the lowest valuation assumed that the company had minimal assets from which liabilities would not be subtracted and that in the absence of a key employee the company would close. The trial court accepted that value. "[W]here a trial court's valuation of a marital asset is within the range established by the proofs, no clear error is present." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994). Defendant argues that the company should have been valued as of the time of trial instead of the earlier date used, however defendant offered no evidence in support of any such value, and as noted, the valuation expert accounted for the company closing. "For the purposes of dividing marital property, marital assets are typically valued at the time of trial or the time judgment is entered, although a court may, in its discretion, use a different date." *Woodington v Shokoohi*, 288 Mich App 352, 365; 792 NW2d 63 (2010). We find no clear error or abuse of discretion.

During the pendency of this appeal, our Supreme Court considered *Allard I*, and specifically held that as a general matter, even if a prenuptial agreement purported to divide the parties' property between marital and separate estates, "the trial court could exercise its discretion under MCL 552.23(1) and MCL 552.401 to invade [a party's] separate estate." *Allard v Allard*, 499 Mich 932; 878 NW2d 888 (2016) (*Allard II*). On remand, this Court further held as an absolute matter "that parties cannot, by antenuptial agreement, deprive a trial court of its equitable discretion under MCL 552.23(1) and MCL 552.401" *Allard v Allard*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 308194, decided January 31, 2017) (slip op at p 1) (*Allard III*). While we do not criticize the trial court for following what was binding law at the time, we hold that pursuant to *Allard III*, the trial court's modification of the value of the marital estate in the amended judgment of divorce is not sustainable under *Allard I*.

Plaintiff argues that this Court wrongly decided in *Allard III* that prenuptial agreements under MCL 557.28 may pertain to either spousal support or attorney fees, and furthermore that

its discussion of that issue was dicta that is not binding. We are not persuaded that the discussion was dicta: as noted in *Allard I*, the trial court in that case awarded no spousal support because doing so was prohibited by the parties' prenuptial agreement. *Allard I*, 308 Mich App at 547. We are not persuaded that the holding in *Allard III* that "an antenuptial agreement regarding attorney fees or spousal support is one 'relating to' property" was not essential to the case. See *Allison v AEW Capital Mgmt*, 481 Mich 419, 436-438; 751 NW2d 8 (2008).

We agree with plaintiff that spousal support has traditionally been regarded as something distinct from a property division. See *Kyte v Kyte*, 325 Mich 149, 152; 37 NW2d 784 (1949). We are concerned about the *Allard III* Court's narrow focus on money technically being a kind of "property," ignoring the context of how discrete assets are treated differently in divorce cases and related statutes from ongoing payments intended for support. Furthermore, MCL 552.23(1) expressly indicates that "real and personal estate of either party" is distinct from "spousal support." Nevertheless, it appears that prenuptial agreements have traditionally been at least assumed in Michigan to be capable of governing spousal support. See *Rinvelt v Rinvelt*, 190 Mich App 372, 376-379; 475 NW2d 478 (1991). Furthermore, it logically follows that MCL 552.401 extends the trial court's equitable powers to encompass spousal support, and MCL 552.23(1) explicitly does so, and as a consequence, the parties cannot waive the trial court's equitable powers under those statutes to craft an equitable property division *and* amount of spousal support.

Defendant argues that, while *Allard III* does establish that the trial court may invoke equity to ensure what it considers a fair distribution of assets notwithstanding the existence of a prenuptial agreement, the trial court nevertheless erred in exercising its equitable powers in this case. Defendant correctly points out that MCL 552.401 is conditioned on "it appear[ing] from the evidence in the case that the party contributed to the acquisition, improvement, or accumulation of the property." He argues that plaintiff did not contribute to the value of defendant's separate property that he owned prior to the marriage. Defendant further correctly points out that MCL 552.23(1) requires the property award to a party to be "insufficient for the suitable support and maintenance" of that party. He argues that plaintiff showed no such need, and furthermore she could have accepted defendant's offer of income-producing properties that would have "relatively assured[ly]" given her substantial annual income.

We agree that the evidence does not appear to support any contribution by plaintiff to the "acquisition, improvement, or accumulation" of the property defendant owned separately prior to the marriage. However, not only does MCL 552.23(1) logically apply to spousal support, it *explicitly* does so. Defendant contends that "the substantial amount of cash assets provided to [plaintiff], the award of child support, and the property division, which left her debt free at the time of the entry of the Amended Judgement of Divorce, is sufficient for her suitable support and maintenance." That, however, is a matter within the trial court's discretion. See *Allard II*, 499 Mich at 932. We are unable to find that the trial court's decision fell outside the range of principled outcomes. See *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007). However, for the same reason, we are also unable to find that the trial court's decision to decline to award attorney fees to plaintiff fell outside the range of principled outcomes. Because we find that the trial court exceeded neither its powers nor its discretion in awarding spousal support to plaintiff pursuant to MCL 552.23(1) and in declining to award attorney fees to plaintiff, we need not consider any arguments whether the prenuptial agreement itself permits either on its face.

-4-

     We reverse in part the amended judgment of divorce to the extent it modified the value of the marital estate from the value in the original judgment of divorce, and we remand for the trial court to reinstate that portion of the original judgment of divorce. In all other respects, the amended judgment of divorce is affirmed. We do not retain jurisdiction. No costs, neither party having prevailed in full.

/s/ Karen M. Fort Hood
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola