*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD AARON MANN,

        Plaintiff-Appellee,

v

MARGARET CLARK WHITFIELD,

        Defendant-Appellant.

UNPUBLISHED
January 25, 2024

No. 359342
Oakland Circuit Court
LC No. 2019-874512-DM

Before: GARRETT, P.J., and K. F. KELLY and HOOD, JJ.

PER CURIAM.

In this divorce action, defendant Margaret Clark Whitfield appeals as of right the trial court's judgment of divorce confirming an arbitration award. Before issuing the judgment of divorce, the trial court denied Whitfield's motion to vacate portions of the arbitration award and granted plaintiff Richard Aaron Mann's motion to confirm the award. We affirm.

## I. BACKGROUND

Mann and Whitfield were married in 2003 and had two children together. In July 2019, Mann filed for divorce. During an early intervention conference in early September 2019, the parties informed the trial court that there were disputes related to property distribution, child support, and spousal support. The trial court entered an order regarding the early intervention, stating, in relevant part: "An inquiry was made as to domestic violence and no hearing prior to mediation is recommended at this time."

The parties initially attempted to mediate their disputes related to property, spousal support, child support, and attorney fees. From March 2020 to September 2020, they attended three mediation sessions but were unable to reach an agreement during those sessions. In late January 2021, Whitfield sought a restraining order from the trial court to prevent Mann from disseminating her private journals, which she alleged he did in the past and had threatened to do again. The trial court granted the motion, and also ordered Mann to return any copies of the journals he had and any documents or e-mails discussing the journals. Mann testified he did not have those items.

-1-

When mediation failed, the parties agreed to arbitrate.[1]  In a written, stipulated order entered by the trial court, Whitfield agreed that she read and understood the required disclosures under MCL 600.5072(1) and (2), and was voluntarily waiving the domestic violence exclusion under MCL 600.5072(2).  By signing the order, the trial court indicated it found Whitfield's waiver of the domestic violence exclusion to be informed and voluntary under MCL 600.5072(3).  The parties also signed an arbitration agreement, which gave the arbitrator the power to decide an array of issues related to the divorce proceedings.

Arbitration occurred in June 2021.  As related to this appeal, the issues to be decided by the arbitrator included (1) child support; (2) spousal support; (3) division of Mann's Hilliard Lyons Baird (HLB) individual retirement account (IRA), which was identified as account "#8224;" (4) division of Whitfield's HLB IRA, which was identified as account "#9330;"[2] (5) costs related to the children's extracurricular activities; and (6) attorney fees.  With respect to child and spousal support, the arbitrator calculated Whitfield's income presuming she could receive $900 per month from a trust fund.  The arbitrator denied Whitfield's request for spousal support because he found that she could support herself with her significant separate assets, including her trust fund, which was valued at nearly $1 million, her own income from employment of $74,880 per year, and her half of the marital estate.  With respect to child support, the arbitrator used the Michigan Child Support Formula (MCSF) and his calculations of the parties' income to determine that Mann would pay Whitfield $312 per month.

Based on evidence Mann submitted, the arbitrator also concluded that he could determine the premarital interest and appreciation of Mann's IRA, and thus awarded Mann 47.92% of his IRA as a separate asset.  The parties were to split the remaining 52.08% as a marital asset. Regarding Whitfield's IRA, the arbitrator found that Whitfield had not submitted sufficient evidence to establish the portion of the IRA that was a separate or premarital asset.  The arbitrator therefore deemed Whitfield's IRA to be a marital asset, which the parties would split equally. Regarding the children's extracurricular activities, the arbitrator decided the children should continue to participate in dance, cross country, basketball, and skiing.  Mann would be responsible for 57.5% of the costs of those activities, and Whitfield would cover the remaining portion.  For any other extracurricular activities, the parties would have to agree on the activity before having to split costs.  If there was no agreement, the party seeking to have the child participate in the activity would bear the cost.  Lastly, as related to attorney fees, the arbitrator determined the "[a]ttorney fees through entry of judgment will be equalized and paid from marital funds."

Whitfield moved the arbitrator to correct certain errors and omissions in the arbitration award.  Relevant to this appeal, she asserted that the arbitrator miscalculated her income for purposes of establishing child and spousal support because she no longer received the $900-per-month disbursement from her trust fund.  Whitfield claimed the arbitrator should have deemed all of Mann's IRA to be a marital asset because he commingled premarital and marital assets in the

---

[1] The individual who served as the mediator also served as the arbitrator.

[2] Both parties have other retirement accounts, including additional IRAs with HLB.  The numbered IRAs cited above are, however, the only two in dispute here.  For simplicity's sake, we refer to the relevant IRAs as Mann's IRA and Whitfield's IRA.

IRA. As for her IRA, Whitfield asserted that she funded it entirely with her trust fund, a separate asset, and therefore, her IRA should also be a separate asset. Whitfield also contended that the arbitrator only ruled on some of the children's extracurricular activities but not others. Lastly, Whitfield argued that the arbitrator erred by failing to award her additional attorney fees because of Mann's misconduct related to her journals.

The arbitrator refused to correct any of those alleged errors, explaining that Whitfield was improperly attempting to use the errors-and-omissions procedure to relitigate her factual and legal claims. The arbitrator therefore declined to amend the award except some minor changes not relevant here.

Mann moved the trial court to confirm the arbitration award and issue a judgment of divorce. Whitfield, on the other hand, moved the trial court to vacate portions of the award. Relevant here, Whitfield raised the same claims of error as those in her motion for the arbitrator to correct the alleged errors and omissions. Like the arbitrator, the trial court determined that Whitfield was trying to relitigate factual and legal issues. The trial court refused to consider Whitfield's factual challenges. The court also reviewed the arbitration award and found no clear legal errors evident on the face of the award. As a result, the trial court confirmed the award and issued the judgment of divorce. This appeal followed.[3]

## II. PRESERVATION AND STANDARDS OF REVIEW

"In general, courts have a limited role in reviewing arbitration awards. This Court reviews de novo a circuit court's decision whether to vacate an arbitration award." *TSP Servs, Inc v Nat'l-Std, LLC*, 329 Mich App 615, 619-620; 944 NW2d 148 (2019). "In addition, this Court also reviews de novo issues of law involving statutory construction, as well as the proper interpretation and application of a court rule . . . ." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 532; 866 NW2d 817 (2014) (citations omitted).

An issue must be raised in or decided by the trial court for it to be preserved for appeal. *Glasker-Davis v Auvenshire*, 333 Mich App 222, 227; 964 NW2d 809 (2020). "[I]ssue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal." *Id.* "Consistent[] with that principle, a party . . . need not preserve an objection to a 'finding or decision' made by the trial court . . . ." *Id.*, quoting MCR 2.517(A)(7). Nevertheless, "so long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Id.* at 228. "This Court also has the power to consider an issue when necessary, even if unpreserved or not properly presented." *Id.*

Whitfield did not raise below her arguments related to the domestic violence exclusion and screening, or extracurricular activities as related to child support, so those issues are unpreserved. See *Glasker-Davis*, 333 Mich App at 227. This Court has historically applied two different standards to unpreserved issues in the civil context: plain-error, see, e.g., *Mr Sunshine v Delta College of Trustees*, 343 Mich App 597, 601; ___ NW2d ___ (2022); *Demski v Petlick*, 309 Mich

---

[3] The trial court stayed division of the challenged IRAs pending the outcome of this appeal.

App 404, 426-427; 873 NW2d 596 (2015); *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), and the so-called "raise-or-waive" rule, see, e.g., *In re Conservatorship of Murray*, 336 Mich App 234, 240-242; 970 NW2d 372 (2021); *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192-194; 920 NW2d 148 (2018) (applying the so-called raise-or-waive standard, but "acknowledg[ing] that decisions of our Supreme Court and this Court have applied the plain-error standard of review to certain unpreserved issues in the civil context"). Our Supreme Court has yet to state definitively which standard is the appropriate standard for the civil context. See *Shah*, 324 Mich App at 194 n 5 (noting that our Supreme Court has applied plain-error in certain civil contexts and declining to decide "under what circumstances the plain-error standard of review should be applied in the civil context"). But see *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2-5 (holding that our Supreme Court requires application of the so-called raise-or-waive standard).

But recently, a panel of this Court resolved this apparent conflict, holding that the plain-error test does not apply in civil cases, and appellate courts instead apply the raise-or-waive rule. See *Tolas*, ___ Mich App at ___; slip op at 2-5. Regardless, this Court may still "overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id.* at ___; slip op at 3 (quotation marks and citations omitted). As a published decision, this Court is bound by *Tolas*. See MCR 7.215(C)(2). As required by *Tolas*, these issues are waived. See *id.* at ___; slip op at 2-5.

Of course, the so-called raise-or-waive rule has myriad exceptions. See *Tolas*, ___ Mich App at ___; slip op at 3. Though this issue is waived, there are sufficient facts in the record for us to overlook the preservation requirements and address the issue Whitfield now raises. See *id.*

III. LAW GOVERNING ARBITRATION AWARDS IN DOMESTIC-RELATIONS CASES

Whitfield's preserved claims assert that the trial court should have vacated specific portions of the arbitration award for various reasons. "Judicial review of an arbitrator's decision is narrowly circumscribed." *City of Ann Arbor v AFSCME Local 369*, 284 Mich App 126, 144; 771 NW2d 843 (2009). Such limited judicial review "certainly is the case with respect to domestic relations arbitration awards." *Washington v Washington*, 283 Mich App 667, 671; 770 NW2d 908 (2009). "[A]rbitration in domestic relations matters," like this one, is "provide[d] for" and "govern[ed]" by statute. MCL 600.5070(1). See also *Cipriano v Cipriano*, 289 Mich App 361, 367; 808 NW2d 230 (2010) (stating that "[d]omestic-relations arbitration is governed by the specific statutory scheme set forth in the domestic relations arbitration act (DRAA)."). Nevertheless, "[a]rbitration proceedings under this chapter are also governed by court rule except to the extent those provisions are modified by the arbitration agreement or this chapter." MCL 600.5070(1).

There are specific circumstances under which a trial court may vacate an arbitration award. Those circumstances are provided in MCL 600.5081(2), which states:

(2) If a party applies under this section, the court shall vacate an award under any of the following circumstances:

(a) The award was procured by corruption, fraud, or other undue means.

(b) There was evident partiality by an arbitrator appointed as a neutral, corruption of an arbitrator, or misconduct prejudicing a party's rights.

(c) The arbitrator exceeded his or her powers.

(d) The arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear evidence material to the controversy, or otherwise conducted the hearing to prejudice substantially a party's rights.  [MCL 600.5081(2).]

Substantially identical language exists in MCR 3.602(J)(2), which applies to arbitration generally, not just arbitration in domestic relations actions.  Whitfield challenged the arbitration award under MCR 3.602(J)(2)(c), which states "the court shall vacate an award if . . . the arbitrator exceeded his or her powers[.]"

The language of MCL 600.5081(2)(c) and MCR 3.602(J)(2)(c) "is the codification of a phrase used for many years in common-law and statutory arbitrations." *Washington*, 283 Mich App at 672.  "[O]ur Court has repeatedly stated that arbitrators have exceeded their powers whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *Id*. (quotation marks and citation omitted).  "Pursuant to MCL 600.5081(2)(c), then, a party seeking to prove that a domestic relations arbitrator exceeded his or her authority must show that the arbitrator either (1) acted beyond the material terms of the arbitration agreement or (2) acted contrary to controlling law." *Id*.

Regarding the first prong, "this Court has consistently held that arbitration is a matter of contract and that the arbitration agreement is the agreement that dictates the authority of the arbitrators." *Cipriano*, 289 Mich App at 376 (citations omitted).  Regarding the second prong, for a court to "vacate an arbitration award because of an error of law, the error must have been so substantial that, but for the error, the award would have been substantially different." *Id*. at 368 (citation omitted).  "[A]ny error of law must be discernible on the face of the award itself . . . ." *Washington*, 283 Mich App at 672 (citation omitted).  "By on its face we mean that only a legal error that is evident without scrutiny of intermediate mental indicia[] will suffice to overturn an arbitration award." *Id*. (quotation marks and citation omitted).  In other words, "[c]ourts will not engage in a review of an arbitrator's mental path leading to [the] award." *Id*. (quotation marks and citations omitted; second alteration in original).

Though there are certain circumstances in which a court can vacate an arbitration award, there are also circumstances in which it cannot.  "A reviewing court may not review the arbitrator's findings of fact . . . ." *Washington*, 283 Mich App at 672 (citations omitted).  "[E]ven if the [arbitration] award was against the great weight of evidence or was not supported by substantial evidence, this Court would be precluded from vacating the award." *Fette v Peters Constr Co*, 310 Mich App 535, 544-545; 871 NW2d 877 (2015).  Thus, "[i]t is simply outside the province of the courts to engage in a fact-intensive review of how an arbitrator calculated values, and whether the evidence he relied on was the most reliable or credible evidence presented." *Washington*, 283 Mich App at 675.  And although a reviewing court may consider whether an arbitrator acted

contrary to controlling law, it may not review the legal merits of an arbitrator's decision. *TSP Servs*, 329 Mich App at 620 ("A court may not review an arbitrator's factual findings or decision on the merits.") (quotation marks and citation omitted). Considering that distinction, "once we have recognized that the arbitrator utilized controlling law, we cannot review the legal soundness of the arbitrator's application of Michigan law." *Washington*, 283 Mich App at 674. "[A]n allegation that the arbitrators have exceeded their powers must" therefore "be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrator's decision." *Id.* at 675, quoting *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 497; 475 NW2d 704 (1991).

## IV. ALLEGED LEGAL ERRORS

Whitfield first argues that the trial court refused to consider her claims that the arbitrator committed errors of law discernible on the face of the award. We disagree.

At the late October 2021 hearing regarding the arbitration award, the trial court stated:

> All right. Well, it's clear by case law that a Court may not review an[] arbitrator's findings of facts, as it's limited—extremely limited in the review of any allegations of errors or of law. And, the Court cannot substitute its judgment for the arbitrator's judgment and in—by vacating or modifying an award.
>
> So, I don't—I'm not required or authorized—I'm not required to review, I mean, to—I'm not authorized to review the arbitrator's findings of facts. I can't do it and neither can the Court of Appeals. *And, any error of law must be evident on the face of the award itself. I don't find that there is any error of law that's evidence [sic] on the face of the award itself.* I think there—it was extremely thorough, there were corrections, and so I have to deny your motion [Whitfield]. And, in doing so, I am going to confirm the arbitrator's award. [Emphasis added.]

The trial court acknowledged it could not review the arbitrator's findings of fact. See *Washington*, 283 Mich App at 672. As for legal error, the trial court correctly stated the law: it could only vacate the arbitration award if there was an error of law evident on the face of the award itself. See *id*. at 674-675. After stating the applicable law, the trial court then determined there were no such legal errors in the arbitration award. As a result, the trial court determined there was no reason to vacate the arbitration award.

An appellant generally "bears the burden of furnishing the reviewing court with a record that verifies the basis of any argument on which reversal or other claim for appellate relief is predicated." *Kilian v TCF Nat'l Bank*, 343 Mich App 621, 638; ___ NW2d ___ (2022) (quotation marks and citation omitted). Whitfield has not met her burden here. The record she provided establishes that the trial court considered her claims that the arbitrator committed legal errors evident on the face of the arbitration award and found that no such legal errors occurred. *Kilian*, 343 Mich App at 638. The court therefore denied Whitfield's motion to vacate portions of the arbitration award. This was not erroneous. See *Washington*, 283 Mich App at 672, 674-675 (regarding courts' inability to review an arbitrator's factual findings and legal reasoning). Because

Whitfield failed to present a factually-sound argument supported by the record, this argument fails. *Kilian*, 343 Mich App at 638.

## V. THE PARTIES' IRAS

Whitfield next argues that the trial court erred when it confirmed the portion of the arbitration award regarding the division of the parties' IRAs. She contends that the arbitrator's decision to consider her IRA a marital asset, while allowing a portion of Mann's IRA to remain as a separate asset, was a clear legal error requiring that portion of the arbitration award to be vacated. We disagree.

"The goal behind dividing marital property is to reach an equitable distribution in light of all the circumstances." *Washington*, 283 Mich App at 673. "Although marital property need not be divided equally, it must be divided equitably in light of a court's evaluation of the parties' contributions, faults and needs." *Richards v Richards*, 310 Mich App 683, 694; 874 NW2d 704 (2015). When dividing marital property, the question is "what property is marital and what property is separate." *Cunningham v Cunningham*, 289 Mich App 195, 200-201; 795 NW2d 826 (2010). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Id*. at 201. But "separate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and treated by the parties as marital property." *Id*. (quotation marks and citation omitted).

Whitfield challenges the arbitrator's decision to award 47.92% of Mann's IRA to him as a separate asset. The arbitration award indicates, however, that Mann proved that a portion of his IRA was a premarital asset. The arbitrator relied on Mann's testimony and documentary evidence showing the appreciation of the premarital portion of his IRA. On the basis of the evidence, the arbitrator concluded 47.92% of Mann's IRA was a separate asset, which was awarded to him entirely. The remaining 52.08% was a marital asset, which was to be divided equally between the parties. Whitfield claims Mann's IRA contained commingled premarital and marital funds that should not have been separated by the arbitrator.

Whitfield portrays her argument about Mann's IRA as one of law, but it is a fact issue. See *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010) (stating that "whether a particular asset qualifies as marital or separate property" is a "finding[] of fact . . . ."). Mann presented evidence of the separate nature of a portion of his IRA. Whitfield, on the other hand, argued that Mann's IRA contained premarital and marital assets, which had been commingled, resulting in the entire IRA becoming a marital asset. The arbitrator considered the evidence and applicable law, and found that a portion of Mann's IRA was a separate asset. Whitfield's challenge to the arbitrator's factual findings on this issue is not permitted. *Washington*, 283 Mich App at 672. Instead of arguing that the arbitrator cited erroneous law, Whitfield challenges the arbitrator's legal reasoning when evaluating Mann's IRA. As stated, however, such a challenge to an arbitration award is improper. "[O]nce we have recognized that the arbitrator utilized controlling law, we cannot review the legal soundness of the arbitrator's application of Michigan law." *Washington*, 283 Mich App at 674. We cannot revisit the arbitrator's factual findings and legal reasoning related to his decision on Mann's IRA. See *id*. at 672, 674.

Whitfield also challenges the arbitrator's determination that her IRA was a marital asset. She testified that her IRA was funded entirely from her trust fund, a separate asset. She stated that because her IRA was funded by a separate asset, it should remain a separate asset. Mann testified that Whitfield funded the IRA during their marriage, though he was unclear how she did so. He stated it was possible she funded it with her trust fund income, but also noted that her trust income supplemented the family's finances during the marriage. The arbitrator considered the evidence and decided that Whitfield's IRA was a marital asset. In doing so, the arbitrator noted that Whitfield failed to prove how her IRA was funded, meaning the record could not support her claim that the asset was entirely premarital. The arbitrator's finding that Whitfield's IRA was a marital asset was factual in nature, and we will not disturb it. *Woodington*, 288 Mich App at 357. To vacate this portion of the award, the trial court would have been required to evaluate the evidence and determine whether the arbitrator erred in its factual findings. The court properly determined it could not do so. *Washington*, 283 Mich App at 672. As with her argument about the arbitrator's decision related to Mann's IRA, Whitfield challenges the arbitrator's legal reasoning when deciding her IRA was a marital asset. But, as stated, if the arbitrator relies on controlling law (which he did), we are unable to "review the legal soundness of the arbitrator's application of Michigan law." *Id*. at 674. We therefore reject Whitfield's invitation to revisit the arbitrator's factual findings and legal reasoning related to his decision on her IRA. *Id*. at 672, 674.

## VI. CHILD AND SPOUSAL SUPPORT

Whitfield argues the trial court should have corrected the arbitrator's erroneous calculation of her income with respect to child and spousal support. She asserts that applicable caselaw required determination of her *actual* income, which no longer included $900-per-month disbursements from her trust fund. We disagree.

"A trial court must presumptively follow the MCSF when determining the child support obligation of parents." *Ewald v Ewald*, 292 Mich App 706, 714; 810 NW2d 396 (2011). "[T]he court shall order child support in an amount determined by application of the child support formula developed by the state friend of the court bureau as required in section 19 of the friend of the court act, MCL 552.519." MCL 552.605(2). "A trial court must strictly comply with the requirements of the MCSF in calculating the parents' support obligations unless it 'determines from the facts of the case that application of the child support formula would be unjust or inappropriate . . . .' " *Borowsky v Borowsky*, 273 Mich App 666, 673; 733 NW2d 71 (2007), quoting MCL 552.605(2). "[C]ourts must comply with the plain language of the MCSF, and may not read language into the MCSF that is not present." *Clarke v Clarke*, 297 Mich App 172, 179; 823 NW2d 318 (2012).

"The first step in determining the parents' support obligation under the MCSF is to determine each parent's net income in order to establish, as accurately as possible, the monies available to support the children." *Borowsky*, 273 Mich App at 673 (quotation marks and citation omitted). "The term 'net income' means all income minus the deductions and adjustments permitted by this manual." 2021 MCSF 2.01(A). Under 2021 MCSF 2.01(C)(3), "[i]ncome includes, but is not limited to . . . [d]istributed profits or payments from . . . [a] trust fund . . . ." When deciding income, "[t]he objective . . . is to establish, as accurately as possible, how much money a parent should have available for support." 2021 MCSF 2.01(B). In reaching this objective, "[a]ll relevant aspects of a parent's financial status are open for consideration when determining support." *Id*.

In Michigan, spousal support is governed by MCL 552.23(1) and requires a case-by-case analysis. *Loutts v Loutts*, 298 Mich App 21, 29-30; 826 NW2d 152 (2012). "The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Id*. at 26 (quotation marks and citation omitted). Whether to award spousal support in a given case is discretionary. *Id*. at 30.

Here, the arbitrator summarized the parties' testimony in his arbitration award. Whitfield testified that she used to receive $900 per month as a disbursement from her trust fund but stopped doing so in June 2020, on the advice of her financial advisor. Mann testified that, during the marriage, Whitfield took the $900-per-month disbursement each month and used it to supplement the family's income. Mann believed the trust fund was still available to her to supplement her income. The arbitrator believed the trust fund was available to supplement Whitfield's income at the historical rate of $900 per month. Thus, the arbitrator considered Whitfield's trust fund when calculating Whitfield's income and when deciding child and spousal support.

Whitfield portrays the arbitrator's decision as a legal decision, claiming that this was a legal error evident on the face of the award. She is again incorrect: the arbitrator made a factual finding when it determined that Whitfield earned $900 a month from her trust fund. We cannot review an arbitrator's factual findings. *Washington*, 283 Mich App at 672. There was also no evident error of law in the arbitration award. Whitfield does not contend that a disbursement from a trust cannot be considered income, nor does she challenge the arbitrator's reliance on any caselaw, statute, or section of the MCSF. She instead insists that the trust fund disbursements she alleges she stopped receiving in June 2020 should not have counted as income. This relates to the arbitrator's application of the law, which is also not reviewable by us. See *Washington*, 283 Mich App at 674.

As related to child support, 2021 MCSF 2.01(C)(3) specifically requires disbursement from a trust fund to be counted as income. The MCSF also notes that when calculating a parent's income "[a]ll relevant aspects of a parent's financial status are open for consideration . . . ." 2021 MCSF 2.01(B). A parent's access to a trust fund and historical monthly disbursement from it are "relevant aspect[s]" of that parent's financial status, even if the parent stopped actively taking the disbursement. *Id*. The arbitrator determined that Whitfield still had access to the funds. We cannot review the arbitrator's legal reasoning for arriving at that decision when the reasoning was not evident from the face of the award, and we cannot review the arbitrator's factual finding regarding Whitfield's access to those funds. See *Washington*, 283 Mich App at 672, 674.

We also cannot review the arbitrator's decision declining to award spousal support. As noted, "[t]he object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Loutts*, 298 Mich App at 26 (quotation marks and citation omitted). Here, the arbitrator considered the circumstances of the case, including Whitfield's $900 monthly disbursement from her trust fund. Given the circumstances, the arbitrator concluded spousal support would not be just and reasonable, and therefore, did not award it. This was a factual decision and is therefore unreviewable. *Washington*, 283 Mich App at 672. The arbitrator's application of relevant authority in deciding the spousal-support issue constitutes legal reasoning, which is also unreviewable. *Id*. at 674.

Whitfield contends that the arbitrator violated *Zecchin v Zecchin*, 149 Mich App 723; 386 NW2d 652 (1986),[4] by requiring her to dissipate her assets to support herself. Her reliance on *Zecchin* is misplaced. In *Zecchin*, this Court determined that an award of spousal support was too low when it would require one party "to dissipate her marital assets and become impoverished . . . ." *Id*. at 734-735. Here, Whitfield argues that the arbitrator effectively required her to dissipate her trust fund by calculating spousal support on the basis of a disbursement from the fund that, she says, she could no longer afford. The *Zecchin* Court specifically stated, however, that a party must not be required to dissipate their *marital* assets awarded to them in the divorce. *Id*. Here, Whitfield's trust fund was a separate asset awarded solely to her. She has not claimed, and the record does not support, that she had to dissipate a marital asset to support herself. *Zecchin* is therefore inapplicable and Whitfield has failed to identify a legal error evident on the face of the arbitration award. *Washington*, 283 Mich App at 672. The arbitrator's decision contained a finding, at least inferentially, that the trust fund had sufficient funds to support Whitfield's historical disbursement of $900 per month. Although Whitfield disagreed with the arbitrator's finding, this issue is simply outside our purview. *Id*.

## VII. UNPRESERVED ISSUES

## A. DOMESTIC VIOLENCE EXCLUSION

Whitfield argues that the trial court should have vacated the entire arbitration award because it accepted her waiver of the domestic violence exclusion without finding on the record that her waiver was informed and voluntary. Though waived, we elect to review this issue because it involves a question of law and the facts necessary for its resolution have been presented. See *Tolas*, ___ Mich App at ___; slip op at 3. On review, we disagree with Whitfield.

In support of her argument, Whitfield relies on MCL 600.5072(2) and (3). Those provisions state:

> (2) If either party is subject to a personal protection order involving domestic violence or if, in the pending domestic relations matter, *there are allegations of domestic violence* or child abuse, the court shall not refer the case to arbitration unless each party to the domestic relations matter waives this exclusion. A party cannot waive this exclusion from arbitration unless the party is represented by an attorney throughout the action, including the arbitration process, and *the party is informed on the record* concerning all of the following:

> (a) The arbitration process.

> (b) The suspension of the formal rules of evidence.

---

[4] Although *Zecchin* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *Wells Fargo Rail Corp v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359399); slip op at 10 n 2.

-10-

(c) The binding nature of arbitration.

(3) If, after receiving the information required under subsection (2), a party decides to waive the domestic violence exclusion from arbitration, the court and the party's attorney shall ensure that the party's waiver is informed and voluntary. If the court finds a party's waiver is informed and voluntary, *the court shall place those findings and the waiver on the record*. [Emphases added.]

Here, the parties, their attorney, and the trial court signed a stipulated, written order that adhered to MCL 600.5072. By signing the document, the parties agreed they read the entire order, which contained the required disclosures in MCL 600.5072(2)(a) through (c). Their signatures also established that they understood the entire order, including the waiver of the domestic violence exclusion, and that they were voluntarily agreeing to waive the exclusion. The stipulated order also stated the trial court "hereby finds that by their signatures below each party acknowledges receiving the information required under MCL 600.5072(2), and that each party's waiver of the domestic violence exclusion from arbitration is informed and voluntary as required by MCL 600. 5072(3)[.]"

Mann argues that MCL 600.5072(2) and (3) are not applicable because there were no allegations of domestic violence. Though MCL 600.5072(2) applies when there is a personal protection order involving domestic violence, or there are allegations of domestic violence or child abuse, none of those circumstances are present here. Whitfield contends, however, that she made allegations of domestic violence when she moved for a restraining order against Mann related to her private journals. Mann insists this was not an allegation of domestic violence.

The dispute between the parties appears to be two-fold. Specifically, they disagree whether wife's allegations regarding her journals constituted an allegation of domestic violence under MCL 600.5072(2), and whether the required actions took place "on the record" as required by MCL 600.5072(2) and (3). The parties have not provided any caselaw defining those terms as used in the DRAA,[5] nor has our review of the caselaw provided any guidance from previous appellate decisions. To the extent this issue involves the review of a circuit court's decision whether to vacate an arbitration award and statutory interpretation, we review it de novo. *TSP Servs, Inc*, 329 Mich App at 619-620; *Rental Props Owners Ass'n of Kent Co*, 308 Mich App at 532. See *Mr Sunshine*, 343 Mich App at 620 (M. J. KELLY, J., concurring) (overlooking preservation requirements and reviewing de novo an unpreserved issue regarding the trial court's decision to grant summary disposition). Further, the harmless-error rule, MCR 2.613(A), generally applies in civil proceedings. *In re Miller*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No.

---

[5] Whitfield urges us to rely on the definition of "domestic violence" adopted by this Court in *Brown v Brown*, 332 Mich App 1, 10-12; 955 NW2d 515 (2020). *Brown* involved the Child Custody Act, MCL 722.21 *et seq.*, but we borrowed the definition of "domestic violence" found in the domestic violence prevention and treatment act, MCL 400.1501 *et seq*. See *Brown*, 332 Mich App at 10-12. We need not decide this issue here. Even if Mann's conduct constituted domestic violence, and even if the trial court did not address the waiver of the domestic violence exclusion on the record, Whitfield has failed to prove that her substantial rights were affected by this unpreserved error, as will be discussed later in this opinion.

-11-

364195); slip op at 5. "To overcome this rule, a party must show that an error was prejudicial such that a failure to grant relief would be inconsistent with substantial justice, i.e., that it is more likely than not the error affected the case's outcome." *Id*. at ___; slip op at 5, citing *Barnett v Hidalgo*, 478 Mich 151, 172; 732 NW2d 472 (2007).

Given the lack of caselaw regarding whether a written order qualifies as "on the record" for application of MCL 600.5072(2) and (3), or providing a definition of "domestic violence" under the DRAA, we fail to see how Whitfield can establish that it was more likely than not that any error by the trial court was outcome determinative. *In re Miller*, ___ Mich App at ___; slip op at 5. Whitfield is therefore not entitled to reversal of the judgment of divorce or arbitration award because she has failed to prove an outcome-determinative error. *Id*. at ___; slip op at 5.

Even if the trial court erred because there was an allegation of domestic violence and the proceedings involving Whitfield's waiver of the domestic violence exclusion were not on the record, Whitfield failed to show that the error affected the outcome of the proceedings. *In re Miller*, ___ Mich App at ___; slip op at 5. To do so, she had to establish that that any "error was prejudicial such that a failure to grant relief would be inconsistent with substantial justice, i.e., that it is more likely than not the error affected the case's outcome. *Id*. at ___; slip op at 5. It appears to us that, to warrant reversal, Whitfield had to show that she was coerced into agreeing to arbitrate the divorce, and that, had the trial court performed its alleged statutory duties, such coercion would not have been successful.

Whitfield has failed to prove that the trial court's alleged error affected the outcome of this case. She has not presented any evidence that she was coerced into arbitrating. Whitfield contends that the trial court's failure to conduct waiver proceedings on the record allowed possible coercion to occur, but she has not alleged that actual coercion happened. In her reply brief on appeal, Whitfield asserts that the trial court's "failure to comply with [MCL 600.5072(2) and (3)] is plain legal error and resulted in manifest injustice in allowing [wife] to be coerced into a restrictive form of [alternative dispute resolution (ADR)] without the protections granted by statute." Though she alleges that the trial court's purported error allowed her to be coerced, she presents no evidence or argument she actually was coerced. Thus, in effect, Whitfield has not argued or presented evidence supporting a claim that her waiver of the domestic violence exclusion to arbitration was involuntary. She also does not claim that she misunderstood the stipulated order, or that her waiver was uninformed. Whitfield has failed to demonstrate that the trial court's alleged error under MCL 600.5072(2) and (3) was outcome determinative. Accordingly, she is not entitled to reversal, even assuming that the trial court erred.

## B. DOMESTIC VIOLENCE SCREENING

Whitfield also argues that the arbitrator erred by failing to conduct a screening for domestic violence during the arbitration proceedings. Although this issue is also waived, we elect to address it because it involves a question of law and the necessary facts are present. See *Tolas*, ___ Mich App at ___; slip op at 3. Upon review, we disagree with Whitfield.

In support of this argument, Whitfield relies on MCR 3.216(H)(2). That court rule states:

The mediator must make reasonable inquiry as to whether either party has a history of a coercive or violent relationship with the other party. Throughout the mediation process, the mediator must make reasonable efforts to screen for the presence of coercion or violence that would make mediation physically or emotionally unsafe for any participant or that would impede achieving a voluntary and safe resolution of issues. A reasonable inquiry includes the use of the domestic violence screening protocol for mediators provided by the state court administrative office as directed by the supreme court.

We note that MCR 3.216 relates to "Domestic Relations Mediation," and subsection (H) of that court rule is entitled, "Mediation Procedure." See MCR 3.216(H). When the language of a court rule is unambiguous, we enforce its plain meaning. *Tyler v Findling*, 508 Mich 364, 369-370; 972 NW2d 833 (2021).

The plain language of MCR 3.216(H)(2) indicates that it applies to mediators during mediation, not arbitrators during arbitration. Whitfield directs us to *Dick v Dick*, 210 Mich App 576; 534 NW2d 185 (1995), which, she asserts, stands for the proposition that the screening requirement for mediators in MCR 3.216(H)(2) also applies to arbitrators. We disagree with this reading of *Dick*. There, this Court simply noted that although MCR 3.216 explicitly states that it applies to mediation, it also states that it does not bar a trial court from using other forms of mediation or settlement procedures. *Dick*, 210 Mich App at 581. In *Dick*, we relied on this broad statement from MCR 3.216 to determine that arbitration in a domestic-relations action was permissible on the basis of the parties' stipulation. The *Dick* Court did not discuss domestic-violence screenings in any manner, nor did it state that all procedures applicable to mediators also apply to arbitrators. We note, however, that the Legislature codified the trial court's ability to allow arbitration in a domestic-relations matter in the DRAA. We are not persuaded that *Dick* applies here.

Whitfield has not cited any authority stating that an arbitrator has the same duty to screen for domestic violence issues during arbitration as does a mediator. In *Miller v Miller*, 264 Mich App 497, 503 n 8; 691 NW2d 788 (2004) (quotation marks and citation omitted), rev'd on other grounds 474 Mich 27 (2005), this Court recognized, by citing to the legislative analysis of the DRAA, that while MCR 3.216 "allows a court to order arbitration," it did not "provide standards or guidelines for such arbitration." In other words, MCR 3.216 permitted arbitration but did not regulate it. *Miller*, 264 Mich App at 503 n 8. We found no authority applying the domestic violence screening requirement of a mediator under MCR 3.216(H)(2) to arbitrators. This makes sense given the difference between mediation and arbitration. Mediation often results in a binding *settlement agreement*, which would allow a domestic abuser to exert control over a victim of the abuse to obtain a beneficial settlement. Arbitration, on the other hand, involves an impartial decisionmaker considering the evidence and arguments of the parties and deciding the case irrespective of their agreement. The same concern in mediation about a coercive party using implied threats to force a settlement overly beneficial to the abuser does not exist to the same extent in arbitration. We therefore decline to extend MCR 3.216(H)(2) to arbitrators.

C. EXTRACURRICULAR ACTIVITIES

Whitfield also argues that the trial court should have vacated the portion of the arbitration award related to the children's extracurricular activities because requiring her to pay for all of the activities other than those specifically determined by the arbitrator amounted to an extraordinary expense warranting a deviation from the MCSF. As with the other two unpreserved issues, we address this issue because it involves a legal question and the facts necessary to its resolution were presented. We again disagree with Whitfield.

Whitfield argues that the arbitrator ordered her to pay all of the fees for the children's extracurricular activities not specifically addressed in the arbitration award, which should have been accounted for in the child-support calculation but was not. She appears to rely on a misstatement of both the arbitrator's decision and the law. First, Whitfield claims that the arbitrator ordered the parties to keep the children enrolled in all of their extracurricular activities, but that Mann only had to share the costs of a few of those activities (dance, cross country, basketball, and skiing). In combining these two rulings, Whitfield believes she was ordered to keep the children enrolled in all of their other extracurricular activities—cello lessons, scouts, golfing, martial arts, horse camp, piano lessons, and YMCA—at her expense. On this belief, Whitfield argues that the arbitrator should have deviated from the MCSF because she was responsible for an extraordinary portion of the children's extracurricular activities. In support, she cites to 2021 MCSF 1.04(E), which lists 20 separate situations where "[s]trict application of the formula may produce an unjust or inappropriate result . . . ." Whitfield does not identify which situation she believes exists here. She instead cites *Edwards v Edwards*, 192 Mich App 559; 481 NW2d 769 (1992), arguing it held that extraordinary extracurricular expenses were a valid reason to deviate from the MCSF.

Whitfield misconstrues the arbitration award. The parties disputed the number of extracurricular activities in which the children should remain enrolled. Mann contended that maintaining all of them was too expensive, but Whitfield disagreed and believed they should split the costs. The arbitrator found, generally, that it was "in the children'[s] best interests that they continue to participate in extracurricular activities." In light of Mann's argument about excessive cost, however, the arbitrator determined that "certain current activities in which the children are engaged are not excessive and are consistent with their activities in the past and the financial contributions of the parties to those activities." The arbitrator identified those particular activities (dance, cross country, basketball, and skiing) and split the cost of those activities, with Mann responsible for 57.5% of the cost and Whitfield the other 42.5%. The arbitrator then determined that any activities beyond those four would "have to be agreed upon before either parent is required to share in the expenses of the activity."

Considering the language in the arbitration award, Whitfield was not ordered to pay for all of the fees associated with any extracurricular activity not addressed in the award. Instead, if she wanted the children enrolled in any of the activities not specifically addressed, she had three options: obtain Mann's agreement to the activity, pay for it herself, or remove the child from the challenged activity. Whitfield will therefore only have to pay for all of the children's additional extracurricular activities if she chooses to do so after failing to obtain Mann's agreement. The arbitration award cannot be read to require Whitfield to keep the children engaged in all of the activities and to pay for them herself. We therefore reject this argument.

-14-

Whitfield's extracurricular argument fails for another reason: she has not shown a legal error evident on the face of the award. As stated, our review of an arbitration decision is narrowly circumscribed. *Washington*, 283 Mich App at 672. Relevant here, we may only vacate an arbitration award if an error of law is discernible on the face of the award. *Id*. This standard does not allow us to revisit the arbitrator's legal analysis, only to determine whether the arbitrator relied on the correct law. *Id*.

Whitfield argues that 2021 MCSF 1.04(E) required the arbitrator to deviate from the MCSF, and his failure to do so was an error of law evident on face of the award. We disagree.

Under 2021 MCSF 1.04(A), "[w]hen applying the formula would lead to an unjust or inappropriate result, the court may exercise its discretion, and, on a case-by-case basis, deviate from the formula and determine a more appropriate support amount." When deciding whether to deviate from the formula, the decision-maker "may consider any factor that it determines is relevant." 2021 MCSF 1.04(D). As noted above, 2021 MCSF 1.04(E) contains a list of 20 such "factors," though they more accurately describe situations where the formula may result in an unjust outcome. They include situations where "[t]he child has special needs," 2021 MCSF 1.04(E)(1), "[a] parent is a minor," 2021 MCSF 1.04(E)(3), and "[a] parent has incurred, or is likely to incur, extraordinary medical expenses for either that parent or a dependent," 2021 MCSF 1.04(E)(7). The one possibly relevant situation here is 2021 MCSF 1.04(E)(2), which allows a deviation when "[t]he child has extraordinary educational expenses."

Rather than cite a specific factor and make her argument, Whitfield cites *Edwards*, 192 Mich App at 564. That case is inapplicable to the present dispute. In *Edwards*, this Court considered a trial court order requiring the defendant to pay $240 per week in child support, despite "the child support guidelines set[ting] support at $295 a week . . . ." *Id*. at 561. On appeal, this Court determined the trial court's deviation below the guidelines was erroneous, and noted that, among several of other factors, the children's "educational and extracurricular activities alone cost more than $100 a week." *Id*. at 563-564. We did not, however, determine that a deviation from the MCSF was warranted where there were extraordinary fees for extracurricular activities. *Id*. Consequently, Whitfield has not identified any specific law requiring the arbitrator to deviate from the MCSF. We therefore conclude that the arbitrator's apparent decision not to do so was not an error of law evident on the face of the award. *Washington*, 283 Mich App at 672.

## VIII. WHITFIELD WAIVED HER ARGUMENT REGARDING ATTORNEY FEES

Finally, Whitfield argues that the trial court should have vacated the arbitrator's decision regarding attorney fees because he wrongfully concluded that Mann did not commit misconduct and she was therefore entitled to additional attorney fees at Mann's expense. Whitfield has waived this issue.

"Waiver is the voluntary and intentional relinquishment of a known right." *Varran v Granneman (On Remand)*, 312 Mich App 591, 623; 880 NW2d 242 (2015). A party may waive an issue by implication. *Reed Estate v Reed*, 293 Mich App 168, 177; 810 NW2d 284 (2011). This Court has previously described implied waiver as follows:

An implied waiver may arise where a person has pursued such a course of conduct as to evidence an intention to waive a right, or where his conduct is inconsistent with any other intention than to waive it. Waiver may be inferred from conduct or acts putting one off his guard and leading him to believe that a right has been waived. Mere silence, however, is no waiver unless there is an obligation to speak.

\* \* \*

Waiver is a matter of fact to be shown by the evidence. It may be shown by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or it may be shown by a course of acts and conduct, and in some cases will be implied therefrom. It may also be shown by so neglecting and failing to act as to induce a belief that there is an intention or purpose to waive. Proof of express words is not necessary, but the waiver may be shown by circumstances or by a course of acts and conduct which amounts to an estoppel. [*Id*. (citations omitted).]

In other words, an implied waiver is a "waiver evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Id*. (quotation marks and citation omitted).

Here, one of the issues submitted to the arbitrator was payment of attorney fees. Mann, citing Whitfield's significant separate assets, sought an award requiring both parties to pay their own attorney fees, without equalizing the attorney fees paid from marital funds. Whitfield, on the other hand, requested "payment of attorney fees be equalized from the parties' marital bank accounts before the[y] are divided equally between the parties." Stated differently, Whitfield did not ask the arbitrator to determine that she expended additional attorney fees as a result of Mann's misconduct, and to order him to pay that share of her attorney fees. The arbitrator ruled: "Attorney fees through entry of judgment will be equalized and paid from marital funds." Whitfield received exactly what she requested—the attorney fees were equalized and paid from marital funds. By specifically advocating for this decision by the arbitrator, she has waived any error. See *Reed Estate*, 293 Mich App at 177.[6]

We affirm.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Noah P. Hood

---

[6] Even if not waived, the arbitrator's finding that Mann did not commit misconduct causing Whitfield to expend additional attorney fees was a factual finding. Again, we may not review an arbitrator's factual findings and we reject Whitfield's invitation to do so. *Washington*, 283 Mich App at 672.